Glenn B. SHIPP and Denise A. Shipp, Administrators of the Estate of Michael R. Shipp

v.

The PHOENIX INSURANCE COMPANY d/b/a The Travelers, Appellant.

Superior Court of Pennsylvania.

Argued April 10, 2012.

Filed Aug. 14, 2012.

Brooks R. Foland, Harrisburg, for appellant.

Diane M. Sodano, Perkasie, for appellees.

BEFORE: FORD ELLIOTT, P.J.E., BENDER and COLVILLE,* JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

Appellant, The Phoenix Insurance Company ("Phoenix"), brings this appeal from the entry of an order granting summary judgment in a declaratory judgment action filed by appellee, the administrators of the Estate of Shipp ("the Shipps"). Finding that summary judgment was improperly entered, we reverse.

The trial court accurately stated the underlying facts of this case:

Plaintiff Glenn B. Shipp applied for personal automobile insurance and signed a rejection of stacked underinsured coverage form on September 12, 2002. Said form was signed in the presence of his insurance agent. The policy was issued by the Phoenix Insurance Company. Plaintiffs paid less for non-stacked coverage than they would have paid for stacked coverage. The amount of underinsured motorist benefits available under the policy was $100,000.

This insurance policy was renewed every six months and the declaration sheets issued to Plaintiffs showed underinsured motorist benefits in the amount of $100,000 non-stacked. At the inception of the policy, three vehicles were insured: a 1992 Ford Club Wagon with comprehensive coverage but no collision, a 1995 Ford Windstar with collision and comprehensive coverage and a 1987 BMW 528E with neither comprehensive or collision coverage.

On February 13, 2004, Plaintiffs terminated coverage for the 1987 BMW 528E. On February 19, 2004, Plaintiffs terminated coverage for the 1995 Ford Windstar and added coverage for a 2004 Toyota Highlander with collision and comprehensive coverage. On September 10, 2005, Plaintiffs terminated coverage on the 1992 Ford Club Wagon and added coverage for a 2005 Toyota Corolla CE, which included collision and comprehensive coverage. Defendant did not offer the option to elect or reject stacked underinsured motorist coverage nor did they present new waiver forms to Plaintiffs to reject stacking at any time during these changes.

On February 3, 2006, Plaintiffs' minor son, Michael R. Shipp, was severely injured in a motor vehicle accident. He was a passenger of a motor vehicle driven by William R. Flemming, who admitted liability for the accident. Michael died on February 11, 2006 as result of the injuries sustained in the accident.

On the date of the accident, Plaintiffs and their son where [sic] insured under the above motor vehicle insurance policy which covered two vehicles, the 2005 Toyota Corolla and the 2004 Toyota Highlander. Both vehicles had collision and comprehensive coverage.

---

* Retired Senior Judge assigned to the Superior Court.

Following the accident and Michael's death, Plaintiffs made a claim to Defendant for the limits of underinsured motorist benefits in the amount of $200,000. This amount is the $100,000 underinsured motorist benefit stacked for two vehicles. Defendant responded by tendering $100,000 for the undisputed underinsured motorist benefit limit, but denied that Plaintiffs were entitled to stacked coverage. This Declaratory Judgment Action ensued.

Statement of the court, 11/7/11 at 1–3.

On appeal, Phoenix contends that the entry of summary judgment was in error because Phoenix was not compelled, pursuant to 75 Pa.C.S.A. § 1738, to obtain a second waiver of stacked uninsured/underinsured ("UM/UIM") coverage limits when the Shipps replaced an existing vehicle with a new vehicle under the insurance policy between Phoenix and the Shipps.

We begin our analysis with our standard of review:

When reviewing a trial court's decision to grant a motion for summary judgment, we adhere to the following standard and scope of review.

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Jones v. Unitrin Auto and Home Insurance Co.*, 40 A.3d 125, 126–127 (Pa.Super.2012), quoting *Erie Insurance Exchange v. Larrimore*, 987 A.2d 732, 736 (Pa.Super.2009) (citation omitted). *Jones* further noted that "ordinary summary judgment procedures are applicable to declaratory judgment actions." *Id.* at 127.

This case involves the interpretation of the following statute:

§ 1738. **Stacking of uninsured and underinsured benefits and option to waive**

(a) **Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) **Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) **More than one vehicle.**—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an

insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738 (in pertinent part).

This case particularly involves the interpretation of section 1738(c) and whether the addition and/or substitution of a new vehicle under the policy constitutes a purchase of additional UM/UIM coverage, requiring the insurer to present the insured with a new opportunity to waive stacked coverage. This question has been partially answered by our supreme court in two separate decisions involving the same parties.

In *Sackett v. Nationwide Mutual Insurance Co.*, 591 Pa. 416, 919 A.2d 194 (2007) ("*Sackett I* "), the insured acquired a policy for two vehicles and initially waived stacked UM/UIM coverage in the amount of $200,000 ($100,000 unstacked). The insured later added a third vehicle to the policy, and the insurer did not provide the insured with the opportunity to again waive stacked coverage. Following an accident, the insured filed a declaratory judgment action seeking $300,000 in stacked coverage under section 1738 because the insurer failed to provide the insured with the opportunity to waive stacked UM/UIM coverage at the time the third vehicle was purchased and added to the policy.

The trial court ruled that when the same named insured simply adds a vehicle to an existing insurance policy, the insurer does not need to acquire a second waiver of stacked UM/UIM coverage. This court

affirmed that decision. On appeal, however, the *Sackett I* court held that the addition of a new vehicle to an existing multi-vehicle policy constitutes a purchase under section 1738(c), such that the insurer was responsible for again acquiring a waiver to stacked coverage.

Following this decision, the supreme court granted re-argument to explore the impact of newly acquired vehicle clauses, almost universally contained in vehicle insurance policies, on its decision in *Sackett I*. In *Sackett v. Nationwide Mutual Insurance Co.*, 596 Pa. 11, 940 A.2d 329 (2007) ("*Sackett II* "), the court noted that there are two common forms used for newly acquired vehicle clauses. The first type provides automatic coverage upon acquisition of the additional new vehicle, but lapses after a specified, finite amount of time, requiring the insured to apply for new coverage thereafter. The second type provides continuing coverage, usually requiring the insured only to give notice that a new vehicle has been acquired. The *Sackett II* court held that the second type of newly acquired vehicle clause does not trigger an obligation by the insurer to obtain a second waiver of stacked coverage; however, where the newly acquired vehicle clause is of the lapsing, finite variety, *Sackett I* still applies and the insurer must again acquire a waiver of stacked coverage.[1]

The wrinkle in the case before us, and which distinguishes it from *Sackett I, II,* or *III*, is the fact that there was no *additional* vehicle being added to the policy; rather, the new vehicle was a *replacement* for

---

1. Ultimately, on remand to the trial court, the court conducted a non-jury trial and again ruled that the Sacketts could stack their coverage. On appeal, this court found that newly acquired vehicle provisions of Nationwide's policy with the Sacketts was of the lapsing finite variety which the supreme court had held to require the re-obtaining of waiver by the insurer. As Nationwide had failed to re-obtain such waiver, this court ruled that the trial court properly permitted the coverage to be stacked. *Sackett v. Nationwide Mutual Insurance Co.*, 4 A.3d 637 (Pa.Super.2010) ("*Sackett III* "), *appeal denied*, —— Pa. ——, 34 A.3d 83 (2011).

an existing vehicle. Thus, unlike *Sackett,* where the policy went from covering two vehicles to three, the instant policy continuously covered two vehicles only. Consequently, there was no change to the potential stacked UM/UIM coverage that was available under the policy ($200,000 stacked, $100,000 unstacked). Before exploring how this difference might affect the case, however, we will first examine the facts under the rationale of *Sackett II.*

Pursuant to *Sackett II,* we look to the nature of the after-acquired vehicle clause of the policy at issue to determine whether this substitution of vehicles constitutes a purchase of new UM/UIM coverage under section 1738. We observe that the instant clause is of the continuous, non-finite variety:

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

a. a private passenger auto; or

b. a pickup or van.

This provision (J.2.) applies only if:

a. you acquire the vehicle during the policy period;

b. you ask us to insure it within 30 days after you become the owner; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if:

a. you wish to add or continue Damage to Your Auto Coverages; or

b. it is a pickup or van used in any "business" other than farming or ranching.

Personal Auto Policy, Definitions, clause J (in pertinent part).

As can be seen, the coverage on the replacement vehicle will continue uninterrupted as long as the Shipps give notice to Phoenix. *Sackett II* held that continuing coverage subject only to a notice requirement did not require the insurer to re-obtain waiver. Thus, the initial waiver signed by the Shipps is still valid and bars the stacking of coverage.

In its opinion, the trial court notes that the insurance coverage changed when the 1992 Ford Club Wagon was replaced by the 2005 Toyota Corolla. The Ford only had comprehensive coverage while the Toyota had comprehensive and collision. The court then reasoned that since the coverage increased, it amounted to a new purchase of insurance under *Sackett II* and required Phoenix to re-obtain a waiver. We disagree.

In *Smith v. The Hartford Insurance Company,* 849 A.2d 277 (Pa.Super.2004), *appeal denied,* 581 Pa. 708, 867 A.2d 524 (2005), this court analyzed the effect of changes to an insurance policy unrelated to the insured's waiver of UM/UIM coverage pursuant to 75 Pa.C.S.A. § 1731. Similar to the waiver of stacking under section 1738, section 1731 requires a signed waiver where the insured chooses to waive UM/UIM coverage altogether. In *Smith,* the insured waived the policy's $300,000 UM/UIM coverage. Subsequently, the insured chose to increase the liability coverage of the policy, but the UM/UIM coverage was not affected. At that time, Hartford did not seek to re-obtain the waiver of UM/UIM coverage. Following an accident, the plaintiff claimed entitlement to UM/UIM coverage. The trial

court ruled that because the insured subsequently raised his liability limits, this constituted a purchase of a new insurance policy requiring Hartford to re-obtain the waiver of UM/UIM coverage. Because Hartford failed to do so, the trial held that Hartford was responsible for UM/UIM coverage. On appeal, this court rejected the notion that the increase in the unrelated liability limits constituted the purchase of a new policy such that a new waiver of UM/UIM benefits had to be obtained. The panel found no statutory or case authority for such a rule.

Similarly, the fact that the Shipps' added collision coverage when they bought the Toyota in 2005 does not constitute a purchase of a new policy for the purpose of triggering the need to obtain another waiver as to stacking. The matter of importance in all of these cases, as well as in section 1738, pertains only to the UM/UIM policy coverage, whether it has changed, and whether a new waiver of stacked coverage is required. At all times, both before and after the acquisition of the 2005 Toyota, the UM/UIM coverage limits of the Phoenix policy remained at $200,000 stacked, $100,000 unstacked. We find the addition of collision coverage to be irrelevant to the issue of stacking under section 1738.

Finally, we examine the effect upon the foregoing analysis of the fact that the instant case pertains to a replacement vehicle as opposed to an additional vehicle. We find that this factor likewise militates against the need for the insurer to re-obtain a waiver from the insured. In the case of a replacement vehicle, there is no change whatsoever in the amount of UM/UIM coverage. The only change is in the identity of the covered vehicle. Indeed, both before and after the purchase of the 2005 Toyota, the UM/UIM coverage available to the Shipps' remained at all times $200,000 stacked, $100,000 unstacked. Since no new insurance coverage was purchased under such circumstances, Phoenix would not need to re-obtain waiver of stacked coverage from the Shipps. Of course, it is possible that under the terms of some hypothetical insurance policy, a replacement vehicle could somehow be interpreted as the acquiring of new coverage, however, under the terms of the instant policy, it is not. For all these reasons, we find that it was error to permit the recovery of stacked limits.

Accordingly, having found that the order of summary judgment improperly permitted coverage to be stacked, we will reverse that order.

Order entering summary judgment in favor of the Shipps is reversed and summary judgment is instead entered in favor of Phoenix.