Helen M. BUMBARGER and Ronald
C. Bumbarger, her Husband,
Appellees

v.

PEERLESS INDEMNITY
INSURANCE COMPANY,
Appellant.

Superior Court of Pennsylvania.

Argued Nov. 19, 2013.

Filed June 6, 2014.

Brigid Q. Alford, Camp Hill, for appellant.

Erin K. Rudert, Pittsburgh, for appellees.

James C. Haggerty, Philadelphia, for Pennsylvania Association for Justice, participating party.

Suzzane T. Tighe, Wilkes Barre, for Pennsylvania Defense Institute, participating party.

BEFORE: BENDER, P.J., FORD ELLIOTT, P.J.E., BOWES, J., GANTMAN, J., DONOHUE, J., ALLEN, J., LAZARUS, J., OTT, J., and WECHT, J.

OPINION BY LAZARUS, J.

Peerless Indemnity Insurance Company (Peerless) appeals from the order[1] granting summary judgment in favor of Appellees Helen M. Bumbarger (Helen) and Ronald C. Bumbarger (the Bumbargers), entitling the Bumbargers to $100,000 in stacked Uninsured Motorist (UM) coverage, and denying Peerless' cross-motion for summary judgment. After careful review, we affirm.

On May 17, 2007, Peerless issued Helen Bumbarger (Helen)[2] a personal automobile policy (the Policy) providing for motor vehicle coverage on two of her vehicles, a 1980 Ford F–150 pick-up truck and a 1998 Ford Taurus. The Policy provided for bodily injury coverage in the amount of $25,000/person/$50,000/occurrence. The Policy also provided for UM/UIM motorist coverage in the amount of $25,000/person/$50,000/occurrence. At the same time, Helen executed forms rejecting stacking of UM/UIM coverage.[3] The rejection forms were valid and in compliance with the provisions of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. §§ 1701–1799.7.

On July 24, 2007, Helen purchased a third vehicle, a 1995 Ford F–150 pick-up truck. That same day, she notified her insurance agent of the purchase and requested that it be added to and insured under the Policy.[4] The insurance agent notified Peerless about the third vehicle and the vehicle was added to the Policy through a validly executed endorsement, effective July 24, 2007. On October 2, 2009, Helen notified her insurance agent that she had purchased a fourth vehicle, a 1985 Ford Bronco; she requested that this

---

1. Although the caption indicates that Peerless also filed a notice of appeal from the trial court's order entering judgment on behalf of the Bumbargers, technically the appeal is taken from the February 3, 2012 final order granting summary judgment in favor of the Bumbargers.

2. Helen was the only named insured on the Policy.

3. Instantly, the rejection of stacking forms that Helen signed stated:

By signing this waiver, I am rejecting stacked limit of uninsured motorists coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead the limit of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

        *    *    *

I understand that the coverage selection and limit choices indicated here will apply to all future policy renewals, continuations and changes unless I notify you otherwise in writing.

Peerless Automobile Insurance Policy, Rejection of "Stacked Limits" for Uninsured Motorists Coverage, 5/17/07.

4. When Helen added her third vehicle to the Peerless Policy, she executed an endorsement of the original policy, also titled a "Policy Changes Summary." That endorsement indicated she had non-stacked uninsured coverage for the new vehicle.

vehicle also be added to and insured under the Policy. The agent notified Peerless and coverage of the fourth vehicle became effective as of the date of purchase; unlike the third vehicle, this fourth vehicle was not added by way of endorsement, but rather its addition was reflected by an amended declarations page.

On December 3, 2009, while driving the 1995 Ford pick-up (third vehicle) Helen was involved in a motor vehicle accident with an uninsured vehicle; she subsequently submitted a claim for UM benefits under the Policy. Helen claimed that she was entitled to stacked UM benefits; Peerless maintained that the original waiver of stacked UM/UIM benefits under the Policy, executed on May 17, 2007, remained in effect.

On September 2, 2010, the Bumbargers filed the underlying complaint against Peerless alleging breach of the insurance contract for failure to provide stacked UM benefits in the absence of new waivers after they had purchased their third and fourth vehicles. Peerless filed preliminary objections, in response to which the Bumbargers filed an amended complaint. Peerless then filed an answer, raising various affirmative defenses in new matter. After the parties stipulated to facts, they both filed motions for summary judgment.

On February 3, 2012, the trial court granted the Bumbargers' motion, declaring the Policy afforded Helen $100,000 in stacked UM benefits and denied Peerless' motion seeking judgment in its favor. Specifically, the trial court found that because the third vehicle was added to the Policy pursuant to an endorsement, the vehicle was effectively added to the Policy's Declarations, *see* Trial Court Opinion, 2/3/12, at 8, and was covered under the general terms of the Policy and not the newly-acquired-vehicle clause. Under such circumstances, the court held that *Sackett v. Nationwide Mutual Ins. Co.,* 591 Pa. 416, 919 A.2d 194 (2007) ("*Sackett I*"), required that Peerless obtain a new stacking waiver from the Bumbargers. Because such a waiver was not obtained, the Bumbargers were entitled to UM[5] coverage as a matter of law.[6] *Id.*

Peerless appealed the trial court's decision to a panel of this Court. On appeal, we affirmed the trial court. *Bumbarger v. Peerless,* Nos. 354 WDA 2012 and 569 WDA 2012 (Pa.Super. filed March 8, 2013) (unpublished memorandum). On April 9, 2013, Peerless filed an application for reargument *en banc,* which was granted on May 6, 2013.

Peerless presents one issue for us on reconsideration:

> Did the lower court improperly grant Plaintiffs/Appellees' motion for summary judgment, and deny the motion for summary judgment by Defendant/Appellant, where the Appellees' original stacking waiver remained in effect as of the date of loss, notwithstanding the addition of two (2) other vehicles to the policy, where an effective stacking re[je]ction form had been signed at the policy's inception, and where the vehicles were added pursuant to an after-acquired vehicle clause that provided for continuing, and not finite, coverage?

Our standard of review in cases of summary judgment is well settled. This court

---

5. Although the trial court states that the Bumbargers were entitled to stack UIM coverage, the relevant coverage at issue in this case involves UM stacking.

6. Having found that the Bumbargers were entitled to stacking under the general terms of the Policy, the court did not find the need to determine the duration of any coverage under the Policy's newly-acquired vehicle clause as was discussed in *Sackett II, infra.*

will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 684 A.2d 137, 140 (1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the nonmoving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt that the moving party is entitled to judgment as a matter of law. *Id.*

The Motor Vehicle Financial Responsibility Law (MVFRL) outlines the process of stacking UM/UIM coverage and any waiver of such coverage, in pertinent part, as follows:

§ 1738. Stacking of uninsured and underinsured benefits and option to waive

(a) **Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) **Waiver.**—Notwithstanding the provisions of subsection (a), **a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.**

(c) More than one vehicle.—**Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b).** The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738 (emphasis added).

The Pennsylvania Supreme Court recently addressed whether an insurer is required to obtain new UM/UIM stacking waivers from an insured when new vehicles are added onto an existing automobile policy, where that insured had waived UM/UIM coverage at the inception of the original policy. Those cases, known as the *Sackett* trilogy, began in 2007 with *Sackett I*. In *Sackett I*, our Supreme Court held that where stacked coverage has been previously waived under section 1738 of the MVFRL, upon addition of a new vehicle to a multi-vehicle automobile policy, the carrier must secure a new signed waiver form or suffer default to stacked UM/UIM limits. *Id.* at 201–202. The Court premised its holding on the plain language of section 1738(c) of the MVFRL and the understanding that the addition of a vehicle to an existing insurance policy constitutes a new purchase of insurance coverage.

Following the Court's decision in *Sackett I*, Nationwide filed a petition for reargument, which the Supreme Court granted. The Court permitted the respondents to file an additional responsive submission and took the matter under advisement on a submitted basis. In *Sackett v. Nation-*

*wide Mutual Ins. Co.,* 596 Pa. 11, 940 A.2d 329 (2007) (*"Sackett II"*), the Supreme Court was asked to specifically decide whether an insured's execution of a valid UM/UIM stacking waiver in an original multi-vehicle policy automatically extends to the addition of a new vehicle to that policy or whether it requires the insurer to secure a new signed waiver form "on pain of a default to stacked UM/UIM limits." *Id.* at 330. The *Sackett II* Court found persuasive the Insurance Commissioner's argument that a UM/UIM stacking waiver remains in effect upon the acquisition of a new vehicle covered under contractual after-acquired-vehicle provisions. Specifically, the Commissioner explained that the "purchase" of UM/UIM coverage under section 1738 of the MVFRL is a term of art in the automobile insurance arena that does not subsume the extension ... of the pre-existing policy terms of a "multi-vehicle policy to a newly-acquired automobile." *Id.* at 333. However, the *Sackett II* Court held that where coverage under an after-acquired-vehicle clause is expressly finite by the terms of the policy, *Sackett I* controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration. Because the *Sackett II* Court could not determine the duration of coverage extended under the Sacketts' policy's after-acquired vehicle clause, the court was constrained to reaffirm the opinion of *Sackett I,* with slight modifications.

On remand from the Supreme Court in *Sackett II,* the trial court conducted a nonjury trial and determined that the Sacketts could stack UIM benefits under the Nationwide policy for a total of $300,000. On appeal, our Court found that *Sackett I* was the controlling authority. Specifically, we found that because the Sacketts added the additional vehicle to the policy by way of an endorsement, the additional vehicle was covered under the general terms of the policy and not the after-acquired vehicle clause. *Sackett v. Nationwide Mutual Ins. Co.,* 4 A.3d 637, 640 (Pa.Super.2010) (*"Sackett III"*). Accordingly, the Court held that because the Sacketts added their additional vehicle to the policy prior to the accident, Nationwide was obligated to obtain a new waiver from the Sacketts declining stacked coverage. *Id.* Because Nationwide did not offer or obtain a stacking waiver from the Sacketts at that time, the Court affirmed the trial court, finding that the Sacketts were entitled to judgment as a matter of law. *Id.* at 640–41. Notably, the Court observed that the after-acquired-vehicle clause had not been invoked by Nationwide and, in fact, had not even been included in the record. *Sackett II,* 940 A.2d at 334 n. 6.[7]

Instantly, Peerless claims that the Bumbargers' addition of their third vehicle to the Policy was effectuated pursuant to the Policy's after-acquired vehicle clause and, because the clause is infinite in duration, under *Sackett II,* Peerless was not required to obtain a new waiver of stacking form. We disagree.

■ We first note that when a court is faced with analyzing the precise issue posed by the parties in the instant case, it must focus on the following: (1) how was the "new" vehicle added onto the existing automobile policy (i.e., via endorsement or newly acquired auto clause); and (2) what is the specific language of the relevant clauses found in the applicable insurance policy? It is only after we answer these two questions, that we can determine

---

**7.** As Justice (now Chief Justice) Castille noted in his dissent, the stacked coverage was, in effect, a holding by default. *Sackett II,* 940 A.2d at 336 (Castille, J., dissenting).

whether an insurer is obligated to have its insured sign new UM/UIM stacking waivers or suffer the default to stacking such coverage. With this framework in mind, we now turn to relevant case law to help us decide the issue on appeal.

In *Shipp v. The Phoenix Ins. Co.*, 51 A.3d 219 (Pa.Super.2012), our Court was also faced with the interpretation of section 1738(c); more specifically, we addressed "whether the addition and/or substitution of a new vehicle under the policy constitutes a purchase of additional UM/UIM coverage, requiring the insurer to present the insured with a new opportunity to waive stacked coverage." *Id.* at 222. In *Shipp*, the insured purchased comprehensive automobile coverage from the defendant-insurer in September 2002. The policy covered three vehicles; the insured chose to waive stacked UM/UIM coverage on the policy. Subsequently, the insured terminated coverage for those original three vehicles and added two new vehicles to the policy over a period of 19 months between February 2004 and September 2005. Defendant did not offer the insured the option to elect or reject stacked UM/UIM coverage, nor did it present new waiver forms for the insureds to reject stacking at any time during the changes in insured vehicles under the policy. Moreover, the final time that the insureds terminated coverage of an original car and added a new car to the policy, they added collision coverage to the new vehicle. At all times during the 19–month period, however, the UIM/UM policy coverage limits remained at $200,000 stacked and $100,000 unstacked. *Id.* at 224.

In February 2006, the insured's son, who was covered under the defendant's policy, was fatally injured in a car accident with an underinsured driver. The insureds sought $200,000 in stacked UIM benefits ($100,000/vehicle) under the de-

fendant's policy. The insurer responded by tendering $100,000 for the UIM benefit limit, but disputed that insureds were entitled to stacked coverage.

The *Shipp* Court was quick to distinguish the facts of its case from those in the *Sackett* trilogy. Specifically, in *Shipp*, the Court noted that there was no additional vehicle being added to the defendant's policy, but, rather, the non-originally insured vehicles constituted "replacement" vehicles. The court found that this distinction was an additional reason to support the finding that the insurer was not required to re-obtain a stacking waiver form from the insured. The Court stated the following:

**In the case of a replacement vehicle, there is no change whatsoever in the amount of UM/UIM coverage. The only change is in the identity of the covered vehicle.** Indeed, both before and after the purchase of the 2005 Toyota, the UM/UIM coverage available to the Shipps[ ] remained at all times $200,000 stacked, $100,000 unstacked. Since no new insurance coverage was purchased under such circumstances, [the insurer] would not need to re-obtain waiver of stacked coverage from the [insureds]. Of course, it is possible that under the terms of some hypothetical insurance policy, a replacement vehicle could somehow be interpreted as the acquiring of new coverage, however, under the terms of the instant policy, it is not.

*Id.* at 224 (emphasis added).

Instantly, the Bumbargers assert that because they added their third vehicle to the Policy by way of endorsement, the newly-acquired auto clause in the Policy was never triggered. The Bumbargers argue that such clauses are rarely used and operate as a safety net for a customer who buys a car, but has not immediately noti-

fied the insurer about the purchase so it has not been added onto an existing policy. Peerless, on the other hand, would have the Court find that such clauses are triggered every time a vehicle is added by an insured to an existing policy.

The facts and language of the instant policy fall somewhere between, but closer to, those of the *Sackett* cases than *Shipp*. On one hand, in *Shipp* the court found that an insurer is not required to re-obtain stacking waivers on *replacement* vehicles, on the other hand, in *Sackett*, the insureds' new vehicles were added to an existing policy and the insured was required to obtain new waivers based on the fact that the vehicles were added by way of endorsement, rendering the after-acquired vehicle provision in the policy inapplicable. However, in both *Sackett* and this case, the vehicles were added to an existing policy; they were not added to replace a vehicle already covered under the policy. Moreover, although the policies in both *Sackett* and the instant case had after-acquired vehicle clauses, because the additional cars were added on pursuant to the policy's endorsement provision immediately after being purchased and were placed on the policy's declarations' page, the after-acquired vehicle clauses became irrelevant.

A significant factor in our decision today is the language of the newly-acquired vehicle clause in the Peerless Policy, which provide, in pertinent part:

K. "Newly acquired auto":

\* \* \*

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

a. For any coverage provided in this policy, except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" **which is in addition to any vehicle shown in the Declarations,** you must ask us to insure it within 14 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

Peerless Automobile Policy, Personal Auto Special Provisions (Pennsylvania Definitions) at section K.2 (emphasis added). Moreover, the policy defines "newly acquired auto" as "any of the following types of vehicles [including a private passenger auto, pickup or van] you become the owner of during the policy period." *Id.* at § C, ¶¶ 1(a) & 1(b) (Definitions). The policy further defines that a newly acquired auto only includes those autos "for which no other insurance policy provides coverage." *Id.* at ¶ 1(b).

Here, the third vehicle added to the Peerless policy in July 2007 was added by endorsement at the time of purchase onto the declarations page of the Policy; at this point, the vehicle was covered by the original policy; therefore, the newly-acquired vehicle clause was not triggered. *See* Peerless Automobile Policy, Personal Auto Special Provisions (Pennsylvania Definitions) ("However, for this coverage to apply to a "newly acquired auto" **which is in addition to any vehicle shown in the Declarations,** you must ask us to insure it

within 14 days after you become the owner.") (emphasis added).

Moreover, even if the newly-acquired automobile clause did apply in the instant case, it would not compel a different result. The Peerless Policy's newly-acquired automobile clause makes a distinction between coverage for vehicles that an insured adds to an existing policy and those that it acquires as a replacement for vehicles already insured under the policy. In the latter case, an insured need not notify the insurer about the replacement vehicle; coverage is automatically applied to that automobile upon the insured gaining its ownership. In the former case, an insured must affirmatively notify the insurer, within a set period of days (45), in order for coverage to be extended to that additional vehicle. We find this distinction to be not only purposeful, but significant to the issue before us today.

As the Insurance Commissioner argued in *Sackett II*, the insurance industry considers new vehicles placed on to an existing policy to be covered under an existing policy as "an extension of pre-existing coverage." [8] This is the case under the Peerless Policy with regard to coverage of replacement vehicles. However, Peerless carefully and intentionally drafted its policy to make a distinction between the burden placed on an insured to "add-on" a vehicle versus "replace" a vehicle under an existing insurance policy. While the former requires notice to the insurer, the latter does not as the policy extends coverage automatically for replacement vehicles.

■  Therefore, because the Bumbargers added their third vehicle to the Peerless Policy by way of an endorsement, the new vehicle was covered under the general terms of the Peerless policy and not its after-acquired vehicle clause. *Sackett III, supra.* Moreover, because this new vehicle was added to the Peerless Policy before the Bumbargers' accident, Peerless was required, under *Sackett I*, to obtain a new waiver from the Bumbargers declining stacked coverage. *Id.* Because Peerless did not offer or obtain a stacking waiver from the Bumbargers, they were entitled to stack UIM coverage as a matter of law in the instant case. Accordingly, the Bumbargers were entitled to judgment as a matter of law. *Merriweather, supra.*

Order affirmed.[9]

GANTMAN, J., concurs in the result.

---

8.  Recognizing that the *Sackett I* Court's discussion of the applicability of the Nationwide's newly-acquired auto provision is *dicta, see supra* n. 7, we urge the Supreme Court to clarify why there should be a different outcome in a case where an insured adds a new car onto a policy via endorsement versus an after-acquired automobile clause. Moreover, the discussion in *Sackett II* regarding finite-versus-infinite language in after-acquired vehicle clauses does little to provide guidance in cases where courts are asked to answer whether existing UM/UIM coverage, under after/newly-acquired vehicle clauses, extends to new vehicles only during the reporting period or whether it continues through the life of the policy.

9.  The instant dispute concerns the UM/UIM coverage on the Bumbarger's third vehicle under the Peerless Policy, a 1995 Ford F–150 pick-up. However, we recognize that the Bumbarger's fourth vehicle, a 1985 Ford Bronco, was also added onto the declarations page of the Policy on the date of purchase (however, not by way of endorsement like the pick-up) and, therefore, under the language of the Policy would presumably require Peerless to offer or obtain a new UM/UIM stacking waiver from the Bumbargers. *See* Peerless Automobile Policy, Personal Auto Special Pro-