J-A32006-15

2016 PA Super 69

CHRISTOPHER TONER,

     Appellant

     v.

THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY,

     Appellee

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 53 WDA 2015

Appeal from the Order December 12, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 12-20308

BEFORE:  SHOGAN, OTT, and STABILE, JJ.

DISSENTING OPINION BY SHOGAN, J.:     **FILED MARCH 21, 2016**

I respectfully dissent from the Majority's decision in this case and would reverse the order granting summary judgment in favor of Appellee, The Travelers Home and Marine Insurance Company ("Travelers") and denying summary judgment to Appellant, Christopher Toner.

On December 2, 2011, twenty-one-year-old Appellant, a student at Penn State, was a front seat passenger in a vehicle operated by Jonathan Edwards.  Complaint, 10/23/12, at ¶ 16.  Edwards lost control of the vehicle, whereupon it traveled off the roadway over an embankment, rolled over, and struck a tree.  *Id*. at ¶ 16.  Appellant suffered multiple spine, pelvis, and rib fractures and a host of other injuries.  *Id*. at 18.

- 1 -

Appellant recovered the liability policy limits for the vehicle driven by Edwards and made a claim for stacked[1] underinsured motorist coverage under his mother's auto policy with Travelers.[2]  In August 2006, Appellant's mother, Patricia Toner ("Mother"), had purchased an automobile insurance policy from Travelers for a single vehicle, a 2004 Hyundai Santa Fe. Complaint, 10/23/12, at Exh. 1; Joint Statement of Stipulated Facts ("JSSF"), 11/24/14, at ¶ 8.  The bodily injury liability amounts were $100,000.00 per person and $300,000.00 per accident.  Complaint at ¶ 5;

---

[1]  The basic concept of stacking has been described as follows:

> [T]he ability to add the coverages available from different vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy. Additionally, there are two types of stacking, inter-policy and intra-policy. ***In re: Insurance Stacking Litigation***, 754 A.2d 702 (Pa. Super. 2000).
>
> Intra-policy stacking[, under consideration instantly,] is when more than one vehicle is insured under a single policy of insurance.  For example: three cars insured under a single policy providing 15/30 UM/UIM benefits. If stacked, an insured is entitled to a total of $45,000 in UM/UIM benefits-three vehicles insured at $15,000 each equaling $45,000 in total coverage.  If unstacked, only $15,000 is available in UM/UIM coverage.
>
> The statutory rationale for this recovery procedure is found at 75 Pa.C.S. § 1733 and 75 Pa.C.S. § 1738 . . . . .

***McGovern v. Erie Ins. Group***, 796 A.2d 343, 344–345 (Pa. Super. 2002).

[2]  Appellant's permanent residence was his mother's house in Bethel Park, Pennsylvania.  He is identified as a covered driver on the declarations page for the Travelers' auto insurance policy.

JSSF at ¶ 9.  Mother also purchased underinsured motorist ("UIM") benefits in the amount of $100,000.00 per person and $300,000.00 per accident. Complaint at ¶ 7; JSSF at ¶ 9.  The policy provided for full tort coverage. Complaint at Exh. 1; JSSF at ¶ 9.  In addition, Mother signed a form (an uninsured ("UM")/UIM stacking waiver) rejecting stacking of UIM benefits in the August 2006 policy.  Complaint at Exh. 1; JSSF at ¶ 10.  The form advised, "Stacking can only be used if you have more than one motor vehicle."  Complaint at Exh. 1.

Thereafter, Mother added two vehicles to the policy; one on February 15, 2007, and one on June 11, 2009, as follows:  On February 15, 2007, Travelers added a 2000 Chevrolet to the policy and placed it on the policy's declarations page.  Complaint at ¶ 10; JSSF at ¶ 12.  The title for the 2000 Chevrolet reflects that Mother became the owner of the 2000 Chevrolet on February 20, 2007; thus, Travelers insured the 2000 Chevrolet before Mother actually owned it.  JSSF at ¶ 14.  Travelers did not present a new UIM stacking waiver form to Mother.  Complaint at ¶ 13; JSSF at ¶ 22. On June 11, 2009, Travelers added a 2005 Chevrolet to the policy and placed it on the policy's declarations page; it was issued June 16, 2009, effective June 11, 2009.  Complaint at ¶ 10; JSSF at ¶ 18.  Again, Travelers did not present a new UIM stacking waiver form to Mother.  Complaint at ¶ 13; JSSF at ¶ 22.

Appellant filed a complaint for declaratory judgment on October 23, 2012. On November 21, 2012, Travelers filed a notice of removal to federal court. By order and memorandum opinion dated January 8, 2013, the federal court remanded the case back to Allegheny County Common Pleas Court. Travelers filed an answer with new matter on January 15, 2013. After discovery and the pleadings closed, Appellant filed a motion for summary judgment, and on August 21, 2014, Travelers filed a cross-motion for summary judgment.

The parties filed the JSSF on November 24, 2014. The trial court granted Travelers' motion for summary judgment and denied Appellant's motion for summary judgment on December 12, 2014. Appellant filed a notice of appeal on January 8, 2015. It does not appear the trial court ordered a Pa.R.A.P. 1925(b) statement. The trial court filed an opinion on February 10, 2015.

Appellant raises the following issue on appeal:

A. Did the trial court err in holding that an insured, who signed a UM/UIM stacking waiver at the inception of a single-vehicle policy, was not entitled to stack UM/UIM benefits even though the carrier failed to obtain stacking waivers when a second and third vehicles were added to the policy?

Appellant's Brief at 4.

The Majority has cited to the standard of review applicable herein. Thus, I first examine the relevant statute.

§ 1738. Stacking of uninsured and underinsured benefits and option to waive

**(a) Limit for each vehicle.**--When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

**(b) Waiver.**--Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

**(c) More than one vehicle.**--Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S. § 1738.

Thus, where benefits are stacked, the amount recited in the declarations is multiplied by the total number of scheduled vehicles. Section 1738(a) provides that UM/UIM coverage shall be considered stacked by multiplying the available coverage by the number of vehicles insured. Under section 1738(b), however, a named insured may elect to waive stacking, in which case the limits of protection are those stated for any one vehicle. Section 1738(c) provides that an insured purchasing UM or UIM coverage for

more than one vehicle must be provided with the opportunity to waive stacking.

The trial court referred to after-acquired and newly-acquired vehicle clauses in automobile insurance policies, noting that these clauses differ from insurance company to insurance company. It stated that there are two general types of such clauses: finite, "under which the insured is given a set number of days (such as thirty) for which [the] insurer will cover the added vehicle until the insured purchases a policy covering the additional vehicle," and continuous, where "the insured must notify the insurer within a set number of days (usually thirty) that [the] insured is adding another vehicle to the policy and the additional vehicle is covered for the remaining term of the policy and going forward, unless the insured changes, replaces or adds vehicles." Trial Court Opinion, 2/10/15, at 2–3. It maintained that these distinctions "are crucial." *Id*. at 3. The essential holding of the trial court was as follows: "[I]t appears the vehicles were added via an after-acquired vehicle clause which was continuous. Therefore an additional waiver was not required and [Mother] was not entitled to stacking of UIM benefits." *Id*. at 6.

The Majority, as did the trial court, focuses on the *Sackett*[3] trilogy of

_____

[3] *See Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194 (Pa. 2007) ("*Sackett I*"), modified on reargument, 940 A.2d 329 (Pa. 2007) ("*Sackett II*"), and 4 A.3d 637 (Pa. Super. 2010) ("*Sackett III*").

cases. In the *Sackett* trilogy, the Pennsylvania appellate courts addressed the question of "whether an insurer is required to obtain new UM/UIM stacking waivers from an insured when new vehicles are added onto an existing automobile policy, where that insured had waived UM/UIM coverage at the inception of the original policy." ***Bumbarger v. Peerless Indemnity Insurance Company***, 93 A.3d 872, 875 (Pa. Super. 2014) (*en banc*) (citation omitted) (analyzing the decisions in ***Sackett I***, ***II***, and ***III***). However, both the ***Sackett*** trilogy and ***Bumbarger*** involved multi-vehicle insurance policies, not single-vehicle policies as in the case *sub judice*. Majority Opinion at 7.

When addressing the issue of enforcement of initial stacking waivers for UIM coverage in ***Sackett I***, our Supreme Court focused **only on existing multi-vehicle policies**. The remedy for an automobile insurer's failure to provide the opportunity to waive stacking of UM/UIM coverages, when the insured added a third vehicle to a policy, was the sum of stacked coverage limits for three vehicles, even though the insured did not pay the premium for stacked coverage. Without the waiver, coverage was provided by statute, and even though the insured had waived stacked coverage on two vehicles, there was no valid waiver on the sum of available stacked limits when the insured added a car to policy. In ***Sackett II***, the Court specifically confined its holding to "the scenario involving the addition of a vehicle to a **multi-vehicle policy**," expressly and unequivocally stating that

it was **not "resolv[ing] . . . arguments concerning situations involving additions to single-vehicle policies**." *Sackett II*, 940 A.2d at 334, n.5 (emphasis added). In *Sackett III*, on appeal from a bench trial decision holding that the Sacketts could stack UIM benefits, this Court concluded that *Sackett I* was the controlling authority and determined that, because the Sacketts added the additional vehicle to the policy through an endorsement, the additional vehicle was covered under the general terms of the policy, not the after-acquired vehicle clause. Since the additional vehicle was added prior to the accident therein, a waiver declining stacked coverage was required.

Appellant asserts that the *Sackett* trilogy of cases is inapposite to the case *sub judice* because here, Mother had a single-vehicle policy when she signed a stacking waiver, and therefore, the waiver is not enforceable. Appellant contends that because the *Sackett* cases discuss the legal ramifications of a UM/UIM stacking waiver when adding a car **to an already existing multi-vehicle policy**, they do not pertain to UM/UIM claims and stacking waivers where a car is added to a single-vehicle policy.

The Majority acknowledges Appellant's "straightforward, and in many ways inviting, argument based largely on the statutory language found in 75 Pa.C.S. § 1738," but rejects it based upon *Craley v. State Farm*, 895 A.2d 530 (Pa. 2006). Majority Opinion at 4–6. The Majority suggests that *Craley* "widened the scope of [75 Pa.C.S.] Section 1738 to include single-vehicle

insurance policies." Majority Opinion at 6. My reading of **Craley**, however, is that it extended application of the Motor Vehicle Financial Responsibility Law ("MVFRL")'s waiver provision only to **inter-policy** stacking of single-vehicle coverage, which is not involved herein. **Craley**, 895 A.2d at 532 ("[W]e hold the named insured's waiver of **inter-policy stacking** enforceable under the facts of this case") (emphasis added); **Nationwide Mut. Ins. Co. v. Zerr**, CIV.A. 10-4199, 2011 WL 3156860 at *6 (E.D.Pa. 2011). The Majority sets forth an interpretation of 75 Pa.C.S. § 1738 supported by *dicta* in **Craley** to "reject [Appellant's] interpretation of the statutory requirements of Section 1738." Majority Opinion at 7.

The Majority goes on to evaluate the trial court's application of **Sackett II**, finding that it "is the most relevant of the **Sackett** cases." Majority Opinion at 7. While acknowledging that the **Sackett** cases "involved the addition of a vehicle to an existing multi-vehicle policy, not a single-vehicle policy," the Majority concludes that case law requires examination of the issue similarly. Majority Opinion at 7. I disagree and conclude that it is that very difference that compels a different result herein. Moreover, I take issue with the Majority's extensive four-page discussion of the **Bird**[4] exception in **Sackett II**, even though the Majority acknowledged that the **Bird** holding "is not relevant to the determination of the instant

---

[4] **Bird v. State Farm**, 165 P.3d 343 (N.M.Ct.App. 2007).

matter as ***Bird*** expressly did not address UM/UIM stacking or waiver. . . ." Majority Opinion at 10. In addition to that significant difference, ***Bird*** involved four different insurance policies, suggesting inter-policy stacking concepts, not intra-policy stacking as is at issue herein.

In August 2006, when Mother purchased the single-vehicle policy with Travelers providing for UM/UIM coverage, she signed a UM/UIM stacking waiver. In February 2007, when she added a second vehicle to the policy, she essentially converted her policy into a multi-vehicle policy that provided UM/UIM coverage. Pursuant to 75 Pa.C.S. § 1738(a), as a purchaser of a multi-vehicle policy providing UM/UIM coverage, Appellant maintains that Mother automatically became entitled to UM/UIM stacking. Appellant's Brief at 9. Mother did not waive UM/UIM stacking under section 1738(b) in 2007 because Travelers did not provide her with a UM/UIM stacking waiver, as was required under section 1738(c). Without the waiver, Appellant argues that section 1738(a) of the statute remains in force, and Mother is entitled to UM/UIM stacking.

As Appellant points out, the statute does not require the insurance company to provide a UM/UIM stacking waiver to a single-vehicle policy purchaser or to an insured purchasing a policy which provides no UM/UIM benefits. For 75 Pa.C.S. §1738 to be triggered, two criteria must be met:

1.  the insurance policy that an insured is purchasing must provide UM/UIM benefits and

2.  the policy must be purchased for more than one vehicle.

Here, when Mother purchased her policy in 2004, there was only one vehicle insured under the policy, and there was nothing to stack. Thus, as Appellant asserts, the UM/UIM stacking waiver obtained from Mother by Travelers at the time when she only was insuring one vehicle "was not mandatory and, therefore, [was] . . . unenforceable." Appellant's Brief at 15.

I am persuaded that the *Sackett* trilogy of cases is inapposite to the case *sub judice* because here, Mother had a single-vehicle policy when she signed a stacking waiver, and the waiver was not enforceable. As Appellant submits, the *Sackett* cases discuss the legal ramifications of a UM/UIM stacking waiver when adding a car to an already existing multi-vehicle policy; they do not pertain to UM/UIM claims and stacking waivers where a car is added to a single-vehicle policy.

I find *Bumbarger* similarly distinguishable. In that case, the insurance company issued a personal automobile policy to Ms. Bumbarger providing coverage for two vehicles. At that time, the insured executed forms rejecting stacking of UM/UIM coverage. Approximately two months later, a third vehicle was added to the policy through an endorsement. A fourth vehicle was added two years later; unlike the third vehicle, it was added by an amended declarations page. *Bumbarger*, 93 A.3d at 874. After the insured was involved in an accident in the third vehicle and filed a claim for stacked UM benefits, the insurer maintained that the original

waiver of stacked UM/UIM benefits remained in effect. **_Bumbarger_** thus has different considerations from the instant case, as well.[5]

I conclude that a new stacking waiver form should have been provided to Mother when she added the second vehicle to her policy in February of 2007 because that was the first time there existed the possibility that stacking, in particular, intra-policy stacking, became possible. Thus, I would reverse the order of the trial court granting Travelers' motion for summary judgment and denying Appellant's motion for summary judgment.

---

[5] Herein, on both occasions when adding the second and third vehicles to her policy, Mother asked Travelers to add them to her policy. In both instances Travelers issued a new Declarations page reflecting the change to the policy, thereby adding coverage by endorsement. Thus, in neither instance was the after-acquired-vehicle clause triggered.