J-A19044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHELE DeCROSTA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| ERIE INSURANCE GROUP | : | No. 2982 EDA 2016 |

Appeal from the Order August 25, 2016
in the Court of Common Pleas of Northampton County,
Civil Division, No(s): CV-2-14-11707

BEFORE: BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 18, 2017**

Michele DeCrosta ("DeCrosta") appeals from the Order granting the

Motion for Summary Judgment filed by Erie Insurance Group ("Erie"). We

affirm.

The trial court set forth the relevant history underlying this appeal as

follows:

> [DeCrosta] brought the present action against [Erie] on
> December 8, 2014[,] seeking to recover stacked uninsured and
> underinsured [("UM/UIM")] motorist benefits [under the
> automobile insurance policy [issued to her by] Erie (hereinafter
> the "Policy"), which insured two vehicles DeCrosta owned.[1] …
> [DeCrosta] has held a [P]olicy with [Erie] from approximately July
> [] 1990 to the present. [DeCrosta] was injured in an automobile

---

[1] Pursuant to section 1738(a) of the Motor Vehicle Financial Responsibility
Law ("MVFRL"), an insured may elect to stack his or her UM/UIM motorist
benefits where there is more than one vehicle insured under one or more
policies providing such benefits. **See** 75 Pa.C.S.A. § 1738(a). This means
that "the limits of coverages available … for an insured shall be the sum of the
limits for each motor vehicle as to which the injured person is an insured."
**Id.** Relevantly, however, an insured may elect to waive stacked insurance
coverage by executing a signed waiver. **Id.** § 1738(b), (c).

accident in [February] 2012. Neither party disputes that [DeCrosta's] Policy with [Erie] required [Erie] to indemnify [DeCrosta] for underinsured motorist coverage. The dispute between the parties arose when [DeCrosta] submitted the claim requesting "stacked [UM/UIM] coverage."

[DeCrosta's] [] [P]olicy with [Erie] … reflects unstacked automobile insurance at the time relevant to the accident. [Erie] asserts[,] and [DeCrosta] admitted in her deposition[,] that[, in September 2004, DeCrosta] signed a Waiver of Stacking Underinsured Motorist Coverage Limits form [(hereinafter, "the 2004 waiver")[2]]. [However, t]he parties dispute whether the date [hand]written on the document, September 17, 2004[,] was written by [DeCrosta]. The "unstacked" notation appears in [DeCrosta's] [P]olicy coverage documents for the [P]olicy period between September 3, 2004[,] and September 3, 2005, with an effective date of September 11, 2004[,] and continues through the period in which [DeCrosta] was injured.

In June [] 2006, [DeCrosta's 1985] Chevy Camaro, denoted "Auto #2," was deleted from coverage. Also in June [] 2006, [DeCrosta's 1999] Chevy Malibu, denoted "Auto #3," was added to the [P]olicy. [The P]olicy continue[d] to show "unstacked" [UM/UIM] motorist coverage at the time Auto #3 replaced Auto #2. There was no new waiver of stacked insurance when Auto #3 was added to the [P]olicy.

The dispute between the parties circles around the validity of the 2004 waiver, and the continued application of that waiver through the removal of Auto #2 from the [P]olicy[,] and the addition of Auto #3 to the [P]olicy.

Following [d]iscovery, [Erie] filed a Motion for Summary Judgment on May 11, 2016. [DeCrosta] filed a Response to the Motion for Summary Judgment on June 9, 2016.

---

[2] DeCrosta also signed a separate Waiver of Stacking Uninsured Motorist Coverage Limits form, which bore a handwritten date of September 17, 2004. DeCrosta paid less for non-stacked coverage than she would have paid for stacked coverage.

Trial Court Opinion, 8/25/16, at 1-2 (footnotes added, citations to record omitted).

On August 25, 2016, the trial court entered an Order (and an accompanying Opinion) granting Erie's Motion for Summary Judgment and entering judgment in favor of Erie. DeCrosta timely filed a Notice of Appeal, after which the trial court ordered her to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. DeCrosta timely filed a Concise Statement. The trial court then issued a Pa.R.A.P. 1925(a) Opinion, relying upon the reasoning advanced in its prior August 25, 2016 Opinion.

DeCrosta now presents the following issues for our review:

A. Whether a material issue of fact exists concerning an unrelated, non-stacking waiver [of insurance coverage]?

B. Whether or not the substitution of a Chevrolet Malibu for a Chevrolet Camaro constituted a "replacement vehicle" per the terminology of the applicable insurance [P]olicy?

Brief for Appellant at 3 (capitalization omitted).

When reviewing a trial court's decision to grant a motion for summary judgment, we adhere to the following standard and scope of review:

We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear[:] the trial court's

order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Pergolese v. Std. Fire Ins. Co.**, 162 A.3d 481, 486 (Pa. Super. 2017) (citation omitted).

In her first issue, DeCrosta contends that the trial court improperly entered summary judgment against her, where there was a disputed issue of material fact concerning the validity of the 2004 waiver.[3]   **See** Brief for Appellant at 4-7.  Specifically, DeCrosta points out that the 2004 waiver was purportedly hand-dated by an anonymous person, and contends that "there is no evidence whatsoever produced by Erie … concerning the validity of the anonymous dating of same."  **Id.** at 6-7; **see also id.** at 4 (asserting that Erie "has not met [its] burden of proof in demonstrating that the [2004] waiver produced was actually the exact waiver signed [o]n 9/17/04.").  DeCrosta challenges the trial court's ruling, in its Opinion, that her contention concerning the handwritten date on the 2004 waiver is "immaterial."  **Id.** at 5 (citing Trial Court Opinion, 8/25/16, at 6 n.1) (which, in turn, cites to the

---

[3] This claim is not reasonably suggested in DeCrosta's Statement of Questions Presented.  **See Krebs v. United Ref. Co.**, 893 A.2d 776, 797 (Pa. Super. 2006) (observing that issues not presented in the statement of questions involved are generally deemed waived); **see also** Pa.R.A.P. 2116(a). Nevertheless, we will overlook this defect.  **See Bailey v. Storlazzi**, 729 A.2d 1206, 1210 (Pa. Super. 1999) (stating that "such a defect may be overlooked where [an] appellant's brief suggests the specific issue to be reviewed and appellant's failure does not impede our ability to address the merits of the issue.").

non-precedential federal court decision in ***Lieb v. Allstate Prop. & Cas. Ins. Co.***, 640 Fed. Appx. 194 (3d Cir. 2016)).

Subsection 1738(d) of the MVFRL sets forth the required language for forms to waive UM/UIM stacked insurance coverage. 75 Pa.C.S.A. § 1738(d)(1), (2).[4] Subsection 1738(d) requires that "[t]he named insured shall … sign[] the [] written rejection form[.]" ***Id.***; ***see also id.*** (providing that the waiver form must begin with the following language: "By signing this waiver, I am rejecting stacked limits of [UM/UIM] motorist coverage under the policy …."). Subsection 1738(e) explains that "[t]he forms described in subsection (d) must be signed by the first named insured and dated to be valid." ***Id.*** § 1738(e); ***see also id.*** (providing that a rejection form that does not comply with subsection (d) is void).

As a matter of statutory interpretation, we may not insert into a statute a word or requirement that does not exist in the statute. ***See Commonwealth v. Gehris***, 54 A.3d 862, 865 (Pa. 2012) (stating that "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.") (citation omitted); ***see also Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.***, 788 A.2d 955, 962 (Pa. 2001) (stating that although we must "listen attentively to what a statute

---

[4] In the instant case, the 2004 waiver contains language identical to that provided in subsection 1738(d).

says; one must also listen attentively to what it does not say." (citation and brackets omitted)).

To be a "valid," a UM/UIM stacked insurance waiver form must be signed, but not necessarily dated, by the insured. **See** 75 Pa.C.S.A. § 1738(d), (e). Nowhere in section 1738 did the legislature require that a form "must be signed *and dated* by the first named insured." We may not insert such a requirement into the statute. **See Gehris**, **supra**; **Kmonk-Sullivan**, **supra**.

In the instant case, it is undisputed that DeCrosta signed the 2004 waiver. Accordingly, the trial court did not err in ruling that the 2004 waiver is valid, and that its validity did not hinge upon who dated the document. **Accord State Farm Fire & Cas. Co. v. Rey**, 1995 U.S. Dist. LEXIS 5282, 1995 WL 241493, at **6-7 (E.D. Pa. 1995) (concluding that a date pre-inscribed by an insurance company on a UIM waiver form was sufficient for the form to be "dated" under the MVFRL, and stating that "[t]he purpose of the signature requirement is to ensure that the insured has waived coverage. The only logical purpose for a date is to eliminate disputes about when such a waiver was effective."); **Lieb**, 640 Fed. Appx. at 197-98 (same). Thus, DeCrosta's first issue does not entitle her to relief.[5]

---

[5] Moreover, to the extent DeCrosta contends that Erie was unable to produce a signed UM/UIM stacking waiver for the period of Policy beginning in April 2002, **see** Brief for Appellant at 5, this claim does not entitle her to relief. The 2004 waiver was valid, and was in effect at the time of the accident in question.

In her second issue, DeCrosta contends that a disputed issue of material fact exists concerning the addition of Auto #3 to the Policy. *See* Brief for Appellant at 7-9. Specifically, DeCrosta argues that, contrary to the trial court's determination, Auto #3 did not constitute a "replacement vehicle," which thereby required Erie to present DeCrosta with the opportunity to execute a new UM/UIM stacking waiver. *Id.* at 7. DeCrosta further maintains that there is an ambiguity in the Policy provision that defines "replacement vehicle" as "any private passenger auto that *the insured acquires*, purchases, or leases within the policy period *to replace* an auto described by the declarations." Motion for Summary Judgment, 5/11/16, Exhibit 4 (the Policy) at ¶ 3 (emphasis added). *See* Brief for Appellant at 8; *see also id.* at 7 (citing ***Penn-America Ins. Co. v. Peccadillos, Inc.***, 27 A.3d 259, 264 (Pa. Super. 2011) (*en banc*) (stating that an ambiguity in an insurance policy must be construed in favor of the insured and against the insurer)). DeCrosta contends that the ambiguity lies in the above-italicized language in the definition of "replacement vehicle," *i.e.*, a vehicle that "the insured acquires … to replace …." Brief for Appellant at 8.

The trial court addressed DeCrosta's claim as follows:

[DeCrosta's] Auto #3 was added pursuant to the replacement vehicle clause of the [] [P]olicy. Auto #3 was added to the [P]olicy following the removal of Auto #2. This change is reflected in [t]he Amended Declaration Sheet[.] The Amended Declaration Sheet refers to the reason for amendment as "Auto [#]2- Replaced."

* * *

> [DeCrosta's Auto #3] was a replacement [vehicle] under the definitions provided by the [P]olicy. As a replacement [vehicle], [Erie] was not required to have a new stacking waiver executed by [DeCrosta] when Auto #3 was added to the [P]olicy in 2006. As the [2004] waiver is applicable, [DeCrosta's] has waived her ability to stack coverage under [the P]olicy. There is no genuine issue of material fact. Thus, [Erie] is entitled to judgment as a matter of law.

Trial Court Opinion, 8/25/16, at 5-6 (footnote and citations to record omitted).

To determine whether an insurer is obligated to have an insured sign a new UM/UIM stacking waiver following the addition of a new vehicle to a motorist insurance policy, the Court must focus on the following: "1) how was the 'new' vehicle added to the existing policy (*i.e.*, via endorsement or [a] newly acquired auto clause); and 2) what is the specific language of the relevant clause(s) in the applicable insurance policy?" ***Bumbarger v. Peerless Indem. Ins. Co.***, 93 A.3d 872, 876 (Pa. Super. 2014)).

This Court's decision in ***Shipp v. Phoenix Ins. Co.***, 51 A.3d 219 (Pa. Super. 2012), is directly on-point and controls our disposition. The ***Shipp*** Court addressed "whether the addition and/or substitution of a new vehicle under [a motorist insurance] policy constitutes a purchase of additional UM/UIM coverage, requiring the insurer to present the insured with a new opportunity to waive stacked coverage." ***Id.*** at 222. In ***Shipp***, the insureds' son died as a result of injuries he sustained in a motor vehicle accident. ***Id.*** at 220. Prior to the accident, the insureds signed a waiver of stacked UIM

benefits under their insurance policy. *Id.* After the accident, the insureds made a claim to the insurer for the limits of UIM benefits, in an amount that was the underinsured motorist benefit stacked for two vehicles. *Id.* at 221. The insureds claimed that, under section 1738, *supra*, the insurer should have obtained a second waiver of stacked UM/UIM coverage when the insureds replaced an existing vehicle under the insurance policy with a new vehicle. *Id.*

After thoroughly discussing the relevant law, the *Shipp* Court held that the trial court had erred in permitting the insureds' coverage to be stacked, where (1) the policy continuously covered two vehicles only, and the insureds had merely *replaced* one covered vehicle with another; (2) consequently, there was no change to the potential stacked UM/UIM coverage that was available under the policy; and (3) the initial UM/UIM stacking waiver signed by the insureds was still valid and barred the stacking of coverage. *Id.* at 223-24; *see also id.* at 224 (stating that "[i]n the case of a replacement vehicle, there is no change whatsoever in the amount of UM/UIM coverage. The only change is in the identity of the covered vehicle.").

In the instant case, there were two vehicles on DeCrosta's Policy as of the date she signed the 2004 waiver, and thereafter, there were never more than two vehicles on the Policy. As she merely *replaced* Auto #2 with Auto #3, Erie did not have to obtain from DeCrosta a new UM/UIM waiver. *See id.* at 223-24. Finally, there is no merit to DeCrosta's bald claim that the Policy

provision defining "replacement auto" was somehow ambiguous. Accordingly, the trial court did not err in determining that there is no material issue of fact insofar as this claim is concerned.

Based upon the foregoing, we conclude that the trial court properly granted Erie's Motion for Summary Judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/17