J-A33014-15

2017 PA Super 96

| JOHN M. PERGOLESE AND PEGGY DOUG PERGOLESE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| THE STANDARD FIRE INSURANCE CO., ONE OF THE TRAVELERS INSURANCE COMPANIES D/B/A TRAVELERS PROPERTY CASUALTY AND TRAVELERS GROUP | |
| APPEAL OF: THE STANDARD FIRE INSURANCE CO. | |
| | No. 1467 EDA 2014 |

Appeal from the Judgment Entered April 11, 2014
In the Court of Common Pleas of Montgomery County
Civil Division at No: 10-36947

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

DISSENTING OPINION BY STABILE, J.:                **FILED APRIL 11, 2017**

Appellees possess two insurance policies, a multi-vehicle policy and a single-vehicle policy, under which they executed stacking waivers for uninsured and underinsured motorist coverage ("UM/UIM").  The issue in this case is whether Appellant, Standard Fire Insurance Company ("Standard Fire"), was required to secure a new stacking waiver from Appellees when they added a 1990 Ford F-150 vehicle to their multi-vehicle policy by amending the policy's declaration pages at the time they assumed ownership

_____

[*] Retired Senior Judge assigned to the Superior Court.

of the vehicle. In **Sackett v. Nationwide,** 940 A.2d 329 (Pa. 2007) ("**Sackett II**"), our Supreme Court held that the addition of a vehicle to an existing policy under an after-acquired vehicle clause that extends coverage on a continuous basis does not constitute the "purchase" of "new" insurance that requires the execution of a new waiver form under Section 1738(c) of the Motor Vehicle Financial Responsibility Law ("MVFRL").[1] **Sackett II** notwithstanding, the Majority concludes that Appellees are entitled to stack across their two policies, since the new vehicle was added by way of amended declaration pages that made the policy's after-acquired vehicle clause inapplicable. In my opinion, the Majority unnecessarily limits the **Sackett II** holding and is at odds with the underlying rationale of our Supreme Court in that case. For purposes of construing Section 1738(c), there is no difference between adding a new vehicle to an existing policy by way of amending the declaration pages and adding a vehicle under an after-acquired vehicle clause, where both provide extension of coverage from time of acquisition of the vehicle on a continuous basis. Neither constitutes the purchase of new insurance that requires the execution of a new waiver form under Section 1738(c) as interpreted by our Supreme Court in **Sackett II**. I, therefore, respectfully dissent.

_____

[1] 75 Pa.C.S.A. §1701 et seq.

Appellees possess two insurance policies issued through Standard Fire. The first is a multi-vehicle policy that insures four vehicles, including the Mazda MX-6 that was involved in a July 23, 2001 accident. The second is a single-vehicle policy that insures a 1992 Toyota pickup. Both policies provide coverage for uninsured and underinsured coverage, but had signed waivers rejecting stacking of those benefits. In November 1996, Appellees removed a 1988 Plymouth Voyager from the multi-vehicle policy and replaced it with a 1993 Nissan Pathfinder. In February 1998, Appellees removed the 1989 Mazda B-2200 from their multi-vehicle policy, noting it had been "junked," and did not add a replacement at that time. Shortly thereafter, in April 1998, Appellees requested coverage under their multi-vehicle policy for a 1990 Ford F-150. Appellees notified their agent of this new vehicle and requested proof of coverage before they completed their purchase. Their agent faxed a copy of the insurance card and issued amended declaration pages reflecting coverage for this new vehicle and an increase in premium to the policy. At all times, Appellees' insurance policies reflected the benefit of lower premiums for unstacked UM/UIM motorist coverage. In fact, Appellees initially waived the amount of UM/UIM coverage that they now seek to stack.

As a result of the July 23, 2001 accident involving the Mazda MX-6, Appellees made a claim against Standard Fire for stacked underinsured motorist benefits under both policies after they received the liability policy limits from the driver who caused the collision. Appellees contend that

Standard Fire was required to obtain new waivers for stacked underinsured benefits under the **Sackett** trilogy of cases[2] each time a vehicle replaced another under their policies of insurance. Since Standard Fire did not secure new waivers for stacked underinsured benefits when the 1990 Ford F-150 was added to the multi-vehicle policy, Appellees contend they now are entitled to stack underinsured benefits under both policies.

In finding that Appellees were entitled to stack coverage under the two policies, the trial court rejected Standard Fire's contention that the policy's after-acquired clause is triggered every time a vehicle is added by an insurer to an existing policy. Instead, relying upon this Court's decision in **Bumbarger v. Peerless Indemnity Insurance Company**, 93 A.3d 872 (Pa. Super. 2014) (*en banc*), the trial court determined that, since the 1990 Ford F-150 was added by way of amended declarations pages, the new vehicle was covered under the "general terms of the policy" and the after-acquired vehicle clause never was triggered. Alternatively, the trial court offered if the after-acquired vehicle clause applied, the result would not change because the language of the after-acquired clause distinguishes between coverage for an added vehicle and a replacement vehicle. The trial court held the after-acquired clause was non-finite (continuous) in duration

---

[2] The three cases are **Sackett v. Nationwide**, 919 A.2d 194 (Pa. 2007) (**Sackett I**); **Sackett v. Nationwide**, 940 A.2d 329 (Pa. 2007) (**Sackett II**); and **Sackett v. Nationwide**, 4 A.3d 637 (Pa. Super. 2010) (**Sackett III**).

only as it pertains to replacement vehicles. Because the addition of the 1990 Ford F-150 was added as an additional vehicle, Appellant was required to offer or obtain a new stacking waiver from Appellees, assuming *arguendo* that the clause applied.

On appeal, Appellant Standard Fire argues execution of a new waiver form rejecting stacking was not required, since vehicles were replaced under the continuous after-acquired vehicle provision of the Standard Fire policy and not by endorsement or through the purchase of new insurance. Alternatively, Standard Fire contends that even if the 1990 Ford F-150 vehicle was an additional vehicle under the policy, no new waiver was required as the after-acquired vehicle provision provided for continuous coverage. In response, Appellees agree with the trial court's conclusion that the addition of a new vehicle under their policy at the time they were completing the vehicle purchase constituted new insurance requiring Appellant to secure new waiver forms. Alternatively, Appellees maintain that the after-acquired vehicle clause was finite in coverage for additional vehicles and, therefore, new waiver forms were required under this scenario as well.

As in ***Shipp v. Phoenix Ins. Co.***, 51 A.3d 219 (Pa. Super. 2012), the Majority once again viewed the question here as involving the interpretation of Section 1738(c), and whether the addition and/or substitution of a new vehicle under the policy constitutes a purchase of additional UM/UIM

coverage requiring the insurer to present the insured with a new opportunity to waive stacked coverage. Finding *Sackett I*, *Sackett III*, and *Bumbarger* to be controlling, the Majority concludes that the addition of the 1990 Ford F-150 vehicle to the policy did not trigger the after-acquired vehicle clause. Citing *Bumbarger* in particular, the Majority concludes that the after-acquired vehicle clause did not apply to vehicles shown in the policy Declarations. Majority Opinion at 18. The 1990 Ford F-150 was not a replacement vehicle, but rather, was added by way of amended declaration pages some 44 days after another vehicle was removed from the policy. Therefore, the addition of the 1990 Ford F-150 to the policy constituted a new "purchase" of UM/UIM coverage under Section 1738 and required the execution of a new UM/UIM stacking waiver. *Id.* As such, it was unnecessary to discuss whether coverage was finite or continuous under the after-acquired vehicle clause.

Section 1738 of the MVFRL provides:

**Stacking of uninsured and underinsured benefits and option to waive**

**(a) Limit for each vehicle.--**When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

**(b) Waiver.--**Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of

coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

*(c) More than one vehicle.--Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage* and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738 (emphasis added).

In **Sackett I**, our Supreme Court addressed *the statutory interpretation* of Section 1738(c) to determine whether insureds must be given the opportunity to waive stacking of UM/UIM coverage for each instance an insured adds a vehicle to an existing policy. Based solely upon its interpretation of the statutory language of 1738(c) (each named insured purchasing uninsured or underinsured motorist coverage . . . shall be provided the opportunity to waive the stacked limits of coverage), the Court answered in the affirmative. The Court held that when an insured purchases uninsured or underinsured motorist coverage for more than one vehicle under a policy, the insurer has to provide a new stacking waiver each time a new vehicle is added to a policy. The Court made certain, however, to explain that its holding did not extend to instances where an insured replaces a vehicle or renews a policy, as those instances are not considered purchases of new insurance under Section 1738.

Almost immediately after deciding **Sackett I**, the Court agreed to grant reargument requested by the insurer after inviting and receiving an *amicus* statement from the Insurance Commissioner of Pennsylvania. In his statement, the Commissioner offered his disagreement with **Sackett I**'s central conclusion that an *addition* of a new vehicle to an existing multi-vehicle policy constitutes a new purchase of coverage. The Commissioner explained that throughout Section 1738's 17-year history, once policies are put into place, the Department has not treated the addition of a new vehicle, known as an "add-on," as a new purchase of insurance. Rather, the Department deems this to be an *extension* of pre-existing coverage and it has not required carriers to issue, or policyholders to execute, serial waivers when vehicles are added to multi-vehicle policies to reaffirm the continuation of unstacked UM/UIM coverage. *Implicit in this explanation is that Section 1738(c)'s mandate that an insured be offered an opportunity to execute a stacking waiver applies only upon the initial purchase of an insurance policy.* The Commissioner further explained that the *mechanism* by which vehicles *generally* are added to existing policies is via "newly-acquired vehicle clauses," which are practically necessary by the mandate of the MVFRL for financial responsibility as a prerequisite to operating a motor vehicle. These clauses universally are included within automobile insurance policies issued in Pennsylvania. They permit consumers to extend existing coverage, with the same applicable types of coverage and limits, to new and/or substitute

vehicles with coverage applying automatically upon acquisition, subject to various conditions, including timely subsequent notice to the insurer. This procedure facilitates immediate consumer transactions and affords predictability and certainty in terms of the availability and scope of coverage. It was the Commissioner's position that *Sackett I* effectively nullifies newly-acquired vehicle clauses and policies and strips policyholders of the associated benefits of these clauses. *Sackett II*, 940 A.2d at 331.

Upon re-argument, the *Sackett II* Court stated that it believed the Insurance Commissioner's argument that a UM/UIM stacking waiver remains in effect upon the acquisition of a vehicle covered under contractual after-acquired-vehicle provisions has substantial force. *Id.* at 333. The Court was concerned that *Sackett I* could be read as negating the effect of after-acquired-vehicle clauses, particularly since the mechanics of those provisions were not meaningfully developed in the initial proceedings in the case. *Id.* at 332. It thus clarified that *Sackett I* does not preclude enforcement of an initial waiver of stacked UM/UIM coverage extended under after-acquired-vehicle provisions of an existing multi-vehicle policy. *Id.* The Court accepted the Insurance Commissioner's position that the "*purchase*" of UM/UIM coverage under Section 1738(c) is a *term of art*[3] that does *not*

_____

[3] In interpreting the after-acquired vehicle clause in *Sackett II*, the Court was guided by two principles of statutory construction. The first, that words and phrases are to be construed according to rules of grammar and their

*(Footnote Continued Next Page)*

include an *extension* of coverage under a contractual after-acquired-vehicle provision. The Court therefore held that an extension of coverage under an after-acquired-vehicle provision for a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage under Section 1738(c) that would trigger an obligation on the part of an insurer to obtain new or supplemental stacking waivers. **Sackett II**, 940 A.2d at 334. The Court's inquiry, however, did not end with this conclusion. What remained to be considered was the duration of the automatic coverage under a policy's after-acquired-vehicle provision. This was in recognition of the fact that these clauses are contractual in nature and that the mechanics of each clause has to be examined. **Id.** at 334, n.6.

Recognizing that after-acquired vehicle clauses may not always provide continuous coverage upon notice of acquisition of another vehicle, the Court instructed that only to the degree coverage under a particular after-acquired vehicle provision continues in effect throughout the existing policy, subject only to conditions such as notice and payment of premiums, its decision in **Sackett** **I** should not disturb the effect of an *initial* UM/UIM stacking waiver obtained in connection with a multi-vehicle policy. **Id.** at 334. It emphasized that the term "*purchase*" as used in Section 1738, did

(Footnote Continued) —————————

common and approved usage. The second, that when technical words and phrases have acquired a peculiar and appropriate meaning, they are to be construed in accordance with such meaning or definition. **Sackett II**, 940 A.2d at 333.

- 10 -

*not* include adjustments to the scope of an existing policy containing an after-acquired vehicle clause that continues in effect throughout the existing policy. **Id.** However, where coverage under such a clause is made expressly *finite* by the terms of the policy, its decision in **Sackett I** controls and requires the execution of a new UM/UIM stacking waiver upon expiration of the automatic coverage for the unstacked coverage option to continue in effect subsequent to the expiration of the finite coverage. **Sackett II**, 940 A.2d at 334.[4]

While it is true that the Supreme Court's decision in **Sackett II** concerned only whether new waiver forms had to be executed under Section 1738(c) when additional vehicles were added under an existing policy's after-acquired vehicle clause, nothing in the Court's opinion suggests that its rationale is limited only to after-acquired vehicle clauses. In fact, the rationale in **Sackett II** is equally applicable, if not more compelling, when vehicles are added under an existing policy's declaration pages at the time of a vehicle's purchase.

As explained, an after-acquired vehicle clause allows an insured to automatically extend existing coverage upon acquisition of a new vehicle

---

[4] As for its specific holding upon re-argument regarding the policy in **Sackett I**, the Court noted that the general provisions of the insurer's policy, including the after-acquired-vehicle clause and its associated definitions, were not in the record. It therefore could not determine the duration of coverage extended under that particular after-acquired-vehicle clause. In light of this, the result in **Sackett I** was reaffirmed.

without the knowledge of the insurer, so long as notice is provided to the insurer within a defined period of time.  Under **Sackett II**, adding a vehicle in this manner is not the purchase of new insurance that requires the execution of a new waiver form.  Notice to the insurer is required so that coverage can be updated to reflect changes in the vehicles insured.[5]  On the other hand, when an insured advises an insurer of the purchase of a new vehicle upon acquisition so that the policy's declaration pages may immediately be amended to reflect an extension of coverage, the grace period for notice under an after-acquired vehicle clause is not necessary. Continuous coverage is extended without this notice contingency.  Under either scenario, a vehicle is added to an existing policy that extends continuous coverage upon acquisition of the vehicle. The only difference between the addition of a vehicle under an after-acquired vehicle clause and one added by way of amended declaration pages is the timing in which an insurer learns the identity of the newly-acquired vehicle.  The effect of adding a vehicle either by invoking an after-acquired vehicle clause or by amending the declaration pages presents a difference without a distinction for purposes of examining **Sackett II** and Section 1738(c).  Effectively, adding new vehicles by way of amending declaration pages is a more

---

[5] At the time of application and every renewal, an insurer must provide an insured a "declaration of coverage limits and premiums for the insured's existing coverages."  75 Pa.C.S.A. § 1791.1.

efficient means of extending coverage than under an after-acquired vehicle clause that requires subsequent notice to the insurer. Therefore, no reason exists to consider differently the extension of coverage under either means for purposes of determining whether new waiver forms are required under Section 1738(c). Neither constitutes the purchase of new insurance and both allow an insured to extend continuous coverage immediately upon acquisition of a new vehicle. As explained in **Sackett II**, serial waiver forms are not required under Section 1738(c) when continuous coverage is extended for an additional vehicle under an existing policy.

The conclusion that new waiver forms are not required under Section 1738(c) when a vehicle is added to the declaration pages of an existing policy, also is consistent with Section 1791 of the MVFRL and this Court's decision in **Smith v. Hartford Ins. Co.**, 849 A.2d 277 (Pa. Super. 2004).

In **Smith**, the insured purchased automobile insurance in February 1990 which included $300,000 of UM/UIM motorist coverage. In June 1990, the insured executed a waiver of UIM coverage. In 1994, the insured increased liability coverage to $500,000. In 1999, the insured was involved in a car accident with an alleged underinsured driver. In part, the insured claimed entitlement to underinsured coverage[6] based upon the argument

_____

[6] The UIM claim stemmed from injuries to the insured's wife who was considered a "guest passenger" in his vehicle.

- 13 -

that the insurer had not supplied new rejection forms at the time he increased the limits of his liability coverage. The insured argued that by increasing the policy limits for liability coverage, he had purchased a new insurance policy thereby requiring that the insurer supply new rejection forms. This Court disagreed, holding that no new rejection form was required. Section 1791 provides in pertinent part as follows:

> *It shall be presumed that the insured has been advised of the benefits and limits available under this chapter*[7] provided the following notice in bold print of at least 10 point type is given to the applicant at the time of application for original coverage, *and no other* notice or *rejection shall be required*.

75 Pa.C.S. § 1791 (emphasis added). As this Court explained,

> The General Assembly in writing this certainly knew that the purchase of an insurance policy was not a lifetime contract. Policies are renewed, vehicles are bought and sold, amounts of coverage change. *Yet, in spite of this knowledge, the General Assembly has specifically stated that once the applicant has purchased the policy and been informed of the choices available, no other notice or rejection shall be required.*

**Smith**, 849 A.2d at 280 (emphasis added).

This Court also noted in **Smith** that its conclusion was consistent with the statutory scheme outlined in Section 1705 of the MVFRL regarding election of tort options. The full tort option is the default provision. However, once an affirmative election is made, that election is presumed to be in effect throughout the lifetime of that policy. **See** 75 Pa.C.S.A.

_____

[7] The "chapter" referenced in this provision includes Section 1738.

§ 1705(b)(1). This Court saw little difference in being able to waive the right to seek non-economic damages and the ability to reject certain optional coverages. Once an election is made, that decision carries forward until affirmatively changed. I perceive no logical reason to distinguish our holding in **Smith** that an increase in liability coverage does not constitute the purchase of new insurance that would require the execution of new rejection forms from the instant situation where we must decide if adding a vehicle under an existing policy constitutes the purchase of new insurance that would require the execution of a new waiver form. Section 1791 unambiguously states that no new notice or rejection[8] is required after the time of application for original coverage.

Turning now to the specifics of the Standard Fire policy, and in accord with the Supreme Court's instruction that the mechanics of a contractual provision be examined to determine if new waiver forms are required, I conclude that new waiver forms for UM/UIM coverage were not required when Appellees added their 1990 Ford F-150 to their existing policy by way of amending the policy's declaration pages. The Standard Fire policy provides as follows:

**DEFINITIONS**

J. "*Your covered auto*" *means*:

---

[8] In my opinion, a "rejection" is synonymous in this context with a "waiver" that rejects stacking coverage.

- 15 -

1. *Any vehicle shown in the Declarations.*

2. *Any* of the following types of *vehicles on the date you become the owner*:

   a. a private passenger auto; or

   b. a pickup or van.

This provision *(J.2.) applies only if*:

a. you acquire the vehicle during the policy period;

b. *you ask us to insure it within 30 days after you become the owner*; and

c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

*If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced.* You must ask us to insure a replacement vehicle within 30 days only if:

a. you wish to add or continue Damage to Your Auto Coverages; or

b. it is a pickup or van used in any "business" other than farming or ranching.

*If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations*.

(Policy No. 20185337, Personal Auto Policy at 1; Exhibit A to both Motions for Summary Judgment) (emphasis added).[9]

Paragraph J.1 of this policy extends coverage to vehicles shown on the policy's Declarations. The policy contains no term that would deem this coverage finite. When Appellees added their 1990 Ford F-150 to this existing policy by way of amending the declaration pages, their vehicle was insured immediately and continuously upon acquisition, subject, of course, to the payment of premium. No further notice to the insurer was required.

The after-acquired vehicle clause at paragraph J.2, likewise provides that an added vehicle to this existing policy is covered commencing on the day of ownership subject to providing notice to the insurer within 30 days of acquisition. There likewise is no finite contingency. Coverage is continuous, and if the auto is in addition to any vehicle shown in the declarations, coverage provided is the broadest for any vehicle shown in the declarations. Under **Sackett II**, vehicles added under this after-acquired vehicle clause would not require the execution of new waiver forms, since the mechanics of this clause, like the amended declarations, extends coverage on a continuous basis. Adjustments to the scope of coverage under an existing policy do not deem the extension of that coverage the purchase of new

_____

[9] This definition of a "*covered auto*" includes at paragraph J.2 what has been referred to as the after-acquired vehicle clause. Autos included in the declarations also are insured without reference to the after-acquired vehicle clause.

insurance under Section 1738(c). **See Sackett II**, 940 A.2d at 333; **see also Smith**, **supra**. Ultimately, consistent with **Sackett II**, the mechanics of both provisions accomplish the same objective to extend coverage to a new vehicle under an existing policy on a continuous basis. Neither constitutes the purchase of new UM/UIM coverage that would require the execution of a new waiver form.

Citing **Bumbarger**, the Majority concludes that the after-acquired-vehicle provision in the Standard Fire policy is inapplicable because that clause does not apply to vehicles shown in the policy's Declarations. Majority Opinion at 18. The Majority further concludes that pursuant to **Sackett I**, **Sackett III**, and **Bumbarger**, the addition of the 1990 Ford F-150 to the policy by Appellees constituted a new "purchase" of UM/UIM coverage under Section 1738 and required the execution of a new UM/UIM stacking waiver. Majority Opinion at 18. In essence, the Majority reads **Sackett I**, **Sackett III**, and **Bumbarger** to hold that the execution of a new waiver form is unnecessary for UM/UIM coverage under an existing policy only if the vehicle is added by way of an after-acquired vehicle clause. The Majority applies this holding in a mechanical fashion without examining the bases upon which our Supreme Court came to its conclusion in **Sackett II**. As explained above, I believe this to be in error, since doing so blindly ignores the rationale upon which the Court reached its decision in **Sackett II**. The Majority errs by failing to examine the mechanics of this policy, and in particular, how vehicles are added and insured by way of amending the

policy's declaration pages. In doing so, the Majority ignores the instruction in **Sackett II** that the language of a policy and the mechanics of its clauses must be examined when considering these stacking issues. Had the Majority engaged in this exercise, it could have discerned that the addition of a new vehicle by amendment to the declaration pages extends immediate coverage on a continuous basis the same as adding a vehicle under an after-acquired vehicle clause, thus satisfying the criteria under **Sackett II** that would not require the execution of a new waiver form.

In **Bumbarger**, the insured added a third vehicle to her policy by way of an "endorsement" and a fourth by way of an "amended declarations page." After discussing our decision in **Sackett II** and in **Shipp**, we automatically concluded that because the additional cars were added under the policy's endorsement provision and placed on the policy's declarations page immediately after purchase, the after-acquired vehicle clause became irrelevant.[10] This Court held that because the insureds added their third vehicle to the insurance policy by way of an endorsement, the new vehicle was covered under the "general terms of the policy" and not its after-acquired vehicle clause. This Court, however, did not disclose or discuss the

---

[10] Alternatively, this Court held that, since the vehicles were added and not replacements, that the language of the newly-acquired vehicle clause did not automatically extend coverage until and unless the insured requested coverage within 14 days after becoming the vehicle owner. I take no issue with this part of the Court's decision.

text of those provisions. It therefore is impossible to determine from reading **Bumbarger** how the language of those provisions and the remainder of the policy might produce the result reached in that case. This Court simply borrowed the results from the **Sackett** cases and **Shipp** without analyzing how those cases reached their conclusions based upon an examination of the contractual terms of the policies at issue. This violates what our Supreme Court said in **Sackett II**: that the mechanics of these clauses must be examined. Our decision in **Bumbarger**, therefore, is of limited usefulness in determining how a policy's declarations, endorsements, and general policy terms fit together to understand contractually how coverage is provided and how that may affect the need to acquire new waiver forms.

In my view, it also is error for the Majority and for this Court in **Bumbarger**, to state that if a vehicle is added by way of an "endorsement," the vehicle is covered under the "general terms of the policy" and not the after-acquired vehicle clause. **See** Majority Opinion at 16-17, *citing* **Bumbarger**, 93 A.3d at 874, 879. The after-acquired vehicle clause is a part of the general terms of the policy. It is a part of the policy's definitions. Endorsements generally amend a policy's terms by adding or subtracting terms from the policy's general provisions. The general terms, declarations, and any endorsements all comprise the policy and must be read together. Each of these components has no meaning unless they are read in conjunction with each other.

I also take issue with the Majority's characterization of **Bumbarger**. The Majority states that, in **Bumbarger**, we held "[a]n after-acquired vehicle provision merely extends existing coverage until the insured notifies the insurer that he wishes to insure the new vehicle under his policy with the insurer. The after-acquired vehicle clause extends temporary, stop-gap coverage, thereby protecting the insured until the policy can be amended." Majority Opinion at 14 (citing **Bumbarger**, 93 A.3d at 877-878). This was the interpretive position taken by the insureds in that case, but not adopted as a general principle by this Court. Although I do not doubt that an after-acquired vehicle provision may be written in such a manner, again, only an examination of each policy's provisions can determine if this in fact is the effect of an after-acquired vehicle clause. In this case, it clearly is not, as the after-acquired vehicle provision extends coverage continuously from the date the insured becomes owner of a vehicle. Once a vehicle is added to the policy, the coverage is continuous, not temporary. The after-acquired vehicle clause only provides the mechanism by which the vehicle is added to existing coverage.

The Majority's reliance upon **Sackett III** is troubling for a number of reasons as well. After remand to the trial court and appeal again to this Court, we were called upon in **Sackett III** to determine whether the insurer had a duty to provide stacked UIM motorist coverage to the insureds when they added a Ford Windstar to their existing policy through an

"endorsement." This Court held that once the insureds added their Ford Windstar to their policy through an "endorsement," the insurer had to secure a new waiver to prohibit the insureds from stacking UIM benefits. The after-acquired vehicle clause in that case provided that coverage would apply to the insureds' motor vehicles "only if you do not have other collectible insurance." *Sackett III*, 4 A.3d at 640, n.2. This Court considered the addition of the vehicle to the insurance policy by way of endorsement to be other "collectible insurance." It held that after the Ford Windstar was added to the policy by way of an endorsement, the vehicle was covered under the "general terms of the policy" and not its after-acquired vehicle clause. To be certain, this Court also held that once the insureds added their vehicle by way of endorsement, the after-acquired vehicle clause expressly terminated coverage and nullified any coverage they may have had under the after-acquired vehicle clause. Alternatively, this Court found that the after-acquired vehicle clause in *Sackett III* was inherently finite, since it only provided coverage during the first thirty days when a new vehicle was added to the policy and required that the insureds take steps to insure the vehicle after that time.

I believe this Court was in error in *Sackett III* in concluding that the addition of a vehicle to an insurance policy by way of an "endorsement" was other "collectible insurance" to defeat extension of coverage that might be

applicable under an after-acquired vehicle clause.[11] Regrettably, a more critical examination of this part of the **Sackett III** decision is not possible, since this Court did not include the language of the endorsement in its discussion so that the mechanics of that clause, as per **Sackett II**, could be examined. Be that as it may, I find it incredulous that the addition of a vehicle by way of a policy "endorsement" would constitute other "collectible insurance" when the added vehicle is at the same time subject to being insured under the same policy to which the endorsement has been added. Other "collectible insurance" limits an insurer's liability when there is *another* policy applicable to a claim for a loss. **See Harstead v. Diamond State Ins. Co.**, 723 A.2d 179 (Pa. 1999) (one type of another insurance clause is an escape clause that seeks to avoid all liability were other coverage is available). It is improper to speak of an "endorsement" as "other collectible insurance" when an endorsement merely adds or subtracts terms to an existing policy. An endorsement to a policy does not constitute a separate policy of insurance. I believe this part of the **Sackett III** decision evidences a fundamental misunderstanding of an insurance policy. Regrettably, the use of labels like "endorsement," "after-acquired," and "declarations" after

---

[11] In my opinion, this Court in **Sackett III** correctly determined that the after-acquired vehicle clause was finite in duration, thus requiring new stacking waivers, since the insureds were required to purchase new insurance after thirty days. The result is consistent with our Supreme Court's holding in **Sackett II** that new waiver forms are not required if the after-acquired vehicle clause provides continuous coverage.

*Sackett III* now have caused this Court, as here, in an almost mechanical fashion, to decide stacking and waiver issues on the manner by which a vehicle is added to a policy without an examination of the mechanics of a policy's terms and whether those comport with the rationale of the *Sackett II* decision.[12]

In *Bumbarger*, this Court stated that when faced with analyzing a stacking issue, it must focus on the following: "(1) how was the "new" vehicle added onto the existing automobile policy (*i.e.*, via endorsement or newly-acquired auto clause); and (2) what is the specific language of the relevant clauses found in the applicable insurance policy." *Id.*, 93 A.3d at 876. I believe the first inquiry as to how a vehicle is added to an existing policy is misleading, as it potentially places form over substance. It invites the application of labels (*e.g*., "endorsement," "after-acquired vehicle clause," "declarations," "general terms of a policy") as being dispositive in a case without analyzing the mechanics of the terms of a policy. Instead, I believe a better approach is to ask first whether the newly-acquired vehicle is covered under the existing policy regardless of how that occurs, and if so, whether coverage is continuous from the date the vehicle is added to the

_____

[12] Although I take issue with the manner in which *Sackett III* and *Bumbarger* were decided, this dissent would not overrule the decisions in those cases, since as stated, the terms of the endorsements that were dispositive in those cases were not disclosed, thus preventing us now from giving precedential effect to the interpretation of those provisions.

- 24 -

policy. By necessity, the next inquiry would require that the specific language of the policy be examined, as per the second line of inquiry suggested in **Bumbarger**. This would eliminate the current confusion in attempting to decide these stacking cases and interpreting insurance policies by parsing labels such as "endorsements," "declarations," "after-acquired clauses," "replacement vehicles," and "additional vehicles" to determine if a new policy of insurance has been purchased.

In many of these stacking cases, we are faced initially with the legislative direction under Section 1738(c) that an insured must be provided an opportunity to waive stacked coverage of UM/UIM coverage when an insured purchases coverage for more than one vehicle. Since **Sackett II**, our Supreme Court has permitted this legislative directive to be considered as affected by the mechanics of the contractual language of a policy. New waivers are required when there has been a "new" purchase of insurance. New insurance does not include additions to an existing policy that merely extends coverage on a continuous basis. Ultimately, decisions in stacking cases must rest upon an examination of contractual language. Interpreting contracts is nothing new to our courts. The resolution of these cases can be and will be made much simpler if we return to interpreting contracts, as opposed to deciding cases based purely upon the manner in which a vehicle is added to a policy. The latter ignores our duty to engage in contractual analysis and prevents us from properly differentiating between cases.

Instead, I would simply focus on the mechanics of a policy and whether the insured has added a vehicle that continues to be covered under an existing policy, or whether the vehicle is to be insured under a new policy of insurance. This would facilitate easier administration of these policies by the insurer and a simpler understanding of coverage by the insured.

Unlike the trial court, the Majority also concludes that Standard Fire's after-acquired vehicle clause does not apply here and, therefore, it did not find the need to consider whether that clause provided continuous or finite coverage. If it were necessary to address the after-acquired vehicle clause, I would find that the trial court erred when it concluded the clause to be continuous only as it pertains to replacement vehicles. It reached this conclusion by considering that to do otherwise would render the first 30-day notice requirement under the after-acquired vehicle clause superfluous.

Standard Fire's after-acquired vehicle clause provides that a covered auto is both one shown in the declarations or an auto on the day an insured becomes its owner. However, a replacement or additional vehicle remains only continuously insured if Standard Fire is asked within 30 days to insure the vehicle. With respect to replacement vehicles, the clause provides that a replacement vehicle will have the same coverage as the one it replaces, unless within 30 days the insured desires to change amounts of coverage. In the case of an additional vehicle, the clause provides that the replacement vehicle will have the broadest coverage provided for any vehicles shown in

the declarations. The 30-day provisions under this after-acquired vehicle clause serve two separate functions and are not superfluous of each other. With either a replacement or additional vehicle, the insured must notify Standard Fire of the vehicle within 30 days to continue coverage. In the case of a replacement vehicle, which automatically will have the same coverage as the one replaced, the insured must within 30 days notify the insurer if the insured desires not to have the same coverage as the one replaced. The first 30-day period is a notice provision to continue coverage from the date of ownership. The second 30-day provision applies only if the insured desires to change coverage for a replacement vehicle which otherwise would continue with the same coverage as the vehicle replaced. Neither of these notice provisions defeats the continuous coverage provided under the after-acquired vehicle clause. Accordingly, the first 30-day clause does not render the second superfluous.

Finally, I agree with my learned colleague in his concurring opinion that it does not make sense to require a new waiver of stacking when a vehicle is added to a multi-vehicle policy, as there is no reason to believe a policyholder who already has rejected stacking with its higher premium, would have a change of heart and want stacking. I do, however, respectfully disagree with the concurrence that when a single-vehicle policy is purchased, there is nothing to stack because there only is one vehicle and there is no reason for a policyholder to pay for stacked coverage that does

him or her no good. The demand made by Appellees aptly demonstrates why this supposition is not always true. Appellees are attempting to stack their single-vehicle policy with their multi-vehicle policy. While on the face of a single-vehicle policy it is tempting to come to the conclusion there is nothing to stack, stacking under a single-vehicle policy was expressly acknowledged by our Supreme Court in *Craley v. State Farm Fire and Casualty Company*, 895 A.2d 530 (Pa. 2006), wherein the Court discussed both inter- and intra-policy stacking. Again, taking guidance from our Insurance Commissioner, the Court recognized that stacking was lawful under a single-vehicle policy in at least two situations. First, where an insured is injured in his own vehicle that has uninsured motorist coverage and also is covered as an insured under another policy providing uninsured motorist benefits. And second, where an individual is injured in a vehicle other than his own insured vehicle and is an insured under the non-owned vehicle's policy, which also has uninsured motorist coverage (such as an employer's vehicle). *Id.* at 537. A waiver of stacking under a single-vehicle policy indeed serves a salutary purpose. Waiving stacking under a single-vehicle policy serves the intended purpose to limit coverage and to lower premiums.

In conclusion, I would reverse the trial court's decision that Appellant here was required to obtain a new stacking waiver when Appellees added their 1990 Ford F-150 vehicle to their multi-vehicle policy at the time of

purchase by amending the declaration pages of their policy. Under the terms of Appellees' policy, coverage existed as of the day they purchased the vehicle and became its owner. This coverage was continuous from acquisition and did not constitute the purchase of "new" insurance under Section 1738(c) that would require the execution of a new waiver form. I reach this conclusion by giving effect to all the terms of the Standard Fire policy in accord with interpretative principles our Supreme Court detailed in **_Sackett II_**. In my opinion, the Majority errs by ignoring these principles and by attempting to apply the holdings of previous cases without a proper and full examination of the Standard Fire policy terms at issue in this case. I, therefore, respectfully dissent.