J-E02001-21

2021 PA Super 192

| | | |
|---|---|---|
| ROBERT FRANKS AND KELLY A. FRANKS, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 2784 EDA 2019 |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | : | |

Appeal from the Judgment Entered September 4, 2019
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2018-03954

BEFORE: PANELLA, P.J., BENDER, P.J.E., BOWES, J., LAZARUS, J., OLSON, J., DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

OPINION BY LAZARUS, J.: **FILED SEPTEMBER 24, 2021**

Robert Franks and Kelly A. Franks, h/w, ("the Frankses"), appeal from the judgment, entered in the Court of Common Pleas of Bucks County, granting declaratory relief in favor of Appellee, State Farm Mutual Automobile Insurance Company ("State Farm"). Upon careful review, we affirm.

The trial court set forth the factual history of this matter, which is not in dispute, as follows:

On January 18, 2013, the Franks[es] applied for automobile coverage with State Farm for two vehicles, a 2002 Nissan Xterra and a 1999 Ford Taurus. In connection with their application for coverage, Robert Franks, the first named insured under the policy, executed a form rejecting stacked underinsured motorist coverage [("UIM")] that fully complied with the form prescribed by [section] 1738(d)(2) of the Motor Vehicle Financial Responsibility Laws

("MVFRL").[1]    Consistent with the [Frankses'] application for insurance . . . and the rejection of stacked [UIM] coverage, State Farm issued the policy, effective February 3, 2013[,] with non-stacked [UIM] coverage limits of $100,000 per person/$300,000 per accident.

Effective January 22, 2014, at the request of the Franks[es], a third vehicle, a 2012 Nissan Altima, was added to the policy.  Upon adding the third vehicle, the Franks[es] executed a second rejection of stacked limits of [UIM] coverage.  Subsequently[,] effective July 23, 2014, at the request of the Franks[es], the 1999 Ford Taurus was deleted from the policy, reducing the total number of vehicles insured under the Franks[es]' policy from three (3) to two (2).  When the 1999 Ford Taurus was deleted from the policy, the Franks[es] did not request[,] and State Farm did not make[,] any changes to the coverages for the 2002 Nissan Xterra and 2012 Nissan Altima[,] which continued to be insured under the policy.

The deletion of the 1999 Ford Taurus from the policy resulted in a credit being applied to the Franks[es]' State Farm [p]ayment [p]lan in the amount of $15.06 (for the 11 days of unused premium on the 1999 Ford Taurus).  The deletion of the 1999 Ford Taurus did not change any of the coverages on the 2002 Nissan Xterra and 2012 Nissan Altima that continued to be insured under the policy or the premiums charged for the coverages on the two (2) remaining vehicles.  From the time that the 1999 Ford Taurus was deleted from the policy[,] effective July 23, 2014[,] through the time of the August 11, 2016 accident, the total premium that State Farm charged and the Franks[es] paid for the policy was approximately $250.00 lower every six months tha[n] it had been when there were three vehicles insured under the policy.

On or about March 26, 2015, the Franks[es] replaced the 2002 Nissan Xterra on the policy with a 2013 Nissan Frontier, the vehicle [that] was involved in the accident.  From July 2014 through the time of the August 11, 2016 accident, the policy continuously insured two vehicles, and the declarations page of the policy provided non-stacked [UIM] coverage.

After the number of vehicles insured under the policy was reduced from three (3) to two (2), the Franks[es] were never provided with and did not sign another form rejecting stacked [UIM]

---

[1] 75 Pa.C.S.A. §§ 1701-1799.

coverage. From the time of the inception of the policy on February 3, 2013, th[r]ough the time of the August 11, 2016 accident, the Franks[es] were not charged a premium for stacked [UIM] coverage. The Franks[es] were charged and paid a lower premium for non-stacked [UIM] coverage than they would have been charged by State Farm for stacked [UIM] coverage.

On August 11, 2016, Robert Franks sustained injuries in a motor vehicle accident that was caused by the negligence of the driver (hereinafter "the tortfeasor") of the other vehicle involved in the accident. After ascertaining that the bodily injury liability coverage available to the tortfeasor was insufficient to fully compensate them for the injuries and damages they sustained as a result of the accident, the Franks[es] asserted a claim for [UIM] benefits under the policy. In response to the claim, State Farm paid the Franks[es] [UIM] benefits in the amount of $100,000.

State Farm believes that the $100,000 paid to the Franks[es] represents the limit of [UIM] coverage . . . available to the Franks[es] under the policy for their claim for [UIM] benefits arising from the August 11, 2016 accident.

The Franks[es] believe that State Farm is obligated to afford them a total of $200,000 [UIM] coverage for their claim arising from the August 11, 2016 accident.

Trial Court Opinion, 11/18/19, at 1-3.

On July 9, 2018, the Frankses filed a complaint for declaratory judgment, seeking a declaration that State Farm was obligated to pay them an additional $100,000 in UIM benefits because there was no valid waiver of stacked UIM coverage in effect at the time of the accident. State Farm filed a counterclaim for declaratory judgment, seeking a declaration that it was obligated to pay only the $100,000 already tendered in UIM coverage. The parties proceeded to a stipulated non-jury trial on August 27, 2019. On August 30, 2019, the court entered an order granting declaratory judgment in favor of State Farm, declaring that the insurer was only obligated to pay a

total of $100,000 in UIM coverage to the Frankses. Final judgment was entered on September 4, 2019, and the Frankses appealed. After a divided three-judge panel of this Court reversed, State Farm filed an application for reargument before the Court en banc, which was granted. The Frankses raise the following issue for our review:

> Did the trial court err in granting declaratory judgment relief to [State Farm] and finding that [State Farm] was *not* required to obtain a new stacking waiver pursuant to 75 Pa.C.S.A. § 1738(c) and that[,] consequently[,] [the Frankses] are *not* entitled to a total of $200,000 in underinsured motorist coverage?

Brief of Appellants, at 4 (unnecessary capitalization omitted) (emphasis in original).

Because the parties stipulated to the material facts, we are presented with a pure question of law. Accordingly, our scope of review is plenary and our standard of review is *de novo*. ***Thierfelder v. Wolfert***, 52 A.3d 1251, 1261 (Pa. 2012).

This case presents us with a matter of first impression: Whether the removal of a vehicle from an auto insurance policy providing non-stacked UIM coverage for three vehicles constitutes the "purchase" of coverage as contemplated by section 1738(c) of the MVFRL, such that the insured must be provided the opportunity to waive the stacked limits of coverage at the time of removal. To answer this question, we must interpret section 1738 of the MVFRL.

> When we interpret legislative enactments, we are guided by the Statutory Construction Act, which recognizes that "[t]he object of all interpretation and construction of statutes is to ascertain and

- 4 -

effectuate the intention of the General Assembly." 1 Pa.C.S.[A.] § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." ***Id.*** [at] § 1921(b). Words and phrases within a statute must be "construed according to rules of grammar and according to their common and approved usage," ***id.*** [at] § 1903(a), and must be read within the context of the remaining statutory language. ***Commonwealth v. Office of Open Records***, [] 103 A.3d 1276, 1285 ([Pa.] 2014). It is only when the plain language of a statute is ambiguous that courts may resort to other tools of statutory construction in order to ascertain the General Assembly's intent. ***See*** 1 Pa.C.S.[A.] § 1921(c).

***Barnard v. Travelers Home & Marine Ins. Co.***, 216 A.3d 1045, 1050–51 (Pa. 2019). Our Supreme Court has repeatedly indicated that dictionaries should be used as source material to identify a word's "common and approved usage." ***See, e.g.***, ***Philadelphia Eagles Football Club, Inc. v. City of Philadelphia***, 823 A.2d 108, 127 n.31 (Pa. 2003); ***Fogle v. Malvern Courts, Inc.***, 722 A.2d 680, 682 (Pa. 1999); ***Love v. City of Philadelphia***, 543 A.2d 531, 532 (Pa. 1988).

Section 1738 of the MVFRL governs the stacking of uninsured motorist (UM) and UIM benefits and the option to waive such coverage and provides, in relevant part, as follows:

> (a) Limit for each vehicle.--When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.
>
> (b) Waiver.--Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the

- 5 -

stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle.--**Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b)**. The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 Pa.C.S.A. § 1738 (emphasis added).

The vast majority of Pennsylvania case law on stacking involves the *addition* of vehicles to an existing policy, and whether doing so constitutes the "purchase" of insurance requiring the insurer to provide a new stacking rejection form. The seminal line of cases involving that issue is commonly referred to as "the **Sackett** Trilogy." In **Sackett v. Nationwide Mut. Ins. Co.**, 919 A.2d 194 (Pa. 2007) ("**Sackett I**"), the plaintiffs purchased a two-vehicle policy in 1998 and rejected stacked coverage. In July 2000, plaintiffs acquired a third vehicle and added it to their existing policy. At that time, they were not given an opportunity to waive stacking. In August 2000, Mr. Sackett was injured in a motor vehicle that was struck by an underinsured motorist. The Sacketts brought a declaratory judgment action against Nationwide, seeking a declaration that the insurer was required to offer and obtain a new waiver of stacked UM/UIM benefits when they added the third vehicle to their policy. Because the insurer had not done so, the Sacketts claimed entitlement to stacked benefits.

The trial court rejected the Sacketts' claim, and this Court agreed, holding that "a waiver of stacked UM or UIM coverage, once properly executed,

- 6 -

continues to bind the insureds even after the addition of new vehicles to the policy, and that a new waiver need not be obtained by the insurer at the time the new vehicle is added." **Sackett v. Nationwide Mut. Ins. Co.**, 880 A.2d 1243, 1249 (Pa. Super. 2005). On allowance of appeal, the Supreme Court reversed, holding that the addition of a new vehicle to an existing multi-vehicle policy constitutes a "purchase" under the plain language of section 1738(c), requiring an insurer to provide its insured an opportunity to waive the increased stacked UM/UIM limit. In reaching that conclusion, the Court noted that the Sacketts "could not have purchased [UIM] coverage for the [third vehicle] *prior* to its acquisition[.]" **Sackett I**, 919 A.2d at 201 (emphasis in original). Accordingly, the "purchase" could only have occurred *after* they acquired the vehicle. Because the Sacketts did not make a valid waiver of stacked UIM coverage for three vehicles, the Court concluded that the UIM coverage available under their policy was "the sum of the available coverage limits for three vehicles." **Id.** at 203.

Subsequently, the Supreme Court granted reargument to address the impact of the holding in **Sackett I** on after-acquired vehicle clauses. **See Sackett v. Nationwide Mut. Ins. Co.**, 940 A.2d 329 (Pa. 2007) ("**Sackett II**"). While reaffirming the result in **Sackett I**, the Court modified its holding to clarify that the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is *not* a new

purchase of coverage for purposes of section 1738(c), except where coverage under such a provision is expressly made finite by the terms of the policy.[2]

Following **Sackett II**, the case was remanded to the trial court to determine whether the Sacketts' after-acquired vehicle clause was finite or continuous in nature. The trial court concluded that the policy contained a "finite" clause, requiring new stacking rejection forms with the addition of each new vehicle, and, in **Sackett v. Nationwide Mut. Ins. Co.**, 4 A.3d 637 (Pa. Super. 2010) ("**Sackett III**"), this Court agreed.

This Court has had occasion to apply the **Sackett** line of cases several times in the ensuing years. However, each of those cases has involved the application of section 1738 when a vehicle on a multi-vehicle policy was *replaced* by another vehicle, **see Shipp v. Phoenix Ins. Co.**, 51 A.3d 219 (Pa. Super. 2012), or when a vehicle was *added* to a multi-vehicle policy. **See Pergolese v. Standard Fire Ins. Co.**, 162 A.3d 481 (Pa. Super. 2017);

_____

[2] Auto insurance policies issued in Pennsylvania contain provisions under which an after-acquired vehicle is automatically covered upon acquisition, subject to various conditions, including timely subsequent notice to the insurer. **See Sackett II**, 940 A.2d at 331. Some after-acquired-vehicle clauses provide "closed-term" coverage for an after-acquired vehicle only during the reporting period, i.e., the period during which the policyholder is required to provide notice to the insurer. **Id.** at 333. Upon expiration of the reporting period, insureds are required to apply for a new policy to acquire coverage thereafter. **Id.** Other after-acquired vehicle clauses contemplate continuing automatic coverage, subject only to conditions subsequent such as notification as well as payment of any additional premium, in which coverage remains in effect throughout the existing policy period. **Id.** at 334. Under the former, the extension of coverage under an after-acquired vehicle provision is considered a "purchase" for purposes of section 1738. Under the latter, it is not.

*Toner v. The Travelers Home and Marine Ins. Co.*, 137 A.3d 583 (Pa. Super. 2016); *Bumbarger v. Peerless Indem. Ins. Co.*, 93 A.3d 872 (Pa. Super. 2014). We can find no reported case in which a party has claimed section 1738 requires the execution of a new stacking waiver upon *removal* of a vehicle from a multi-vehicle policy.

Despite this lack of precedent, we find considerable guidance from the Supreme Court's analysis in *Barnard v. Travelers Home and Marine Ins. Co.*, 216 A.3d 1045 (Pa. Super. 2019). There, the Court was presented a certified question of law from the United States Court of Appeals for the Third Circuit on the issue of whether an increase in the limits of UIM coverage on a multi-vehicle policy constitutes a "purchase" under section 1738(c), thus requiring an insurer to obtain a new waiver of stacking rights. The Court concluded that it does. In considering the issue, the Court focused its attention on the common and approved usages of the word "purchase." The Court looked first to Black's Law Dictionary, which defines the term as "[t]he act or an instance of buying." *Id.* at 1051, quoting Black's Law Dictionary (11th ed. 2019). The Court then observed that, "[i]n common usage, 'to buy' means to acquire or obtain something from paying for it." *Id.* Accordingly, the Court concluded that "the term 'purchase' requires two things: (1) the acquisition of something; and (2) payment. . . . *In order to satisfy the first, the insured must obtain something that she does not already possess*." *Id.* at 1053 (emphasis added).

Applying this rationale to the instant matter, it is clear that the Frankses did not effectuate a "purchase" of coverage within the plain meaning of section 1738(c). When the Frankses deleted the 1999 Ford Taurus from their policy, they did not "obtain something" that they did not "already possess." *Id.* To the contrary, they eliminated a portion of their existing coverage. Nor did the Frankses make a payment of any sort. In fact, they received a credit from State Farm in the amount of $15.06, and their annual premiums were reduced by a total of $500.00. Accordingly, applying the definition of the word "purchase" as set forth in *Barnard*, it is clear that the deletion of a vehicle from a policy does not result in a "purchase" as contemplated by section 1738(c).

The Frankses' reliance on *Shipp*, *supra*, for the proposition that a new stacking waiver is required whenever there is *any change* in the potential amount of stacked coverage is misplaced. In *Shipp*, this Court held that a new waiver of stacked coverage was not required when an insured replaced one vehicle on his policy with another vehicle, since the insured's UM/UIM coverage remained the same. The Court reviewed *Sackett I* (addition of new vehicle to existing policy constitutes purchase of new coverage under section 1738), *Sackett II* (extension of coverage under after-acquired-vehicle provision to vehicle added to pre-existing multi-vehicle policy is not new purchase of coverage under section 1738), and *Smith v. The Hartford Ins. Co.*, 849 A.2d 277 (Pa. Super. 2004) (increase in unrelated liability limits does not require new waiver of UM/UIM benefits), and concluded that "the matter

of importance in all of [those] cases, as well as in section 1738, pertains only to the UM/UIM policy coverage, *whether it has changed*, and whether a new waiver of stacked coverage is required." **Shipp**, 51 A.3d at 224 (emphasis added). However, in **Shipp**, the Court was not confronted with a situation—as here—in which stacked UM/UIM coverage *decreased*. Thus, to the extent that the foregoing language may be read to suggest that *any* change in stacked coverage—either an increase or a decrease—requires a new stacking waiver, it must be considered *dicta* and is hereby disapproved. Indeed, had the legislature intended to require a new waiver every time a named insured changes uninsured or underinsured motorist coverage for more than one vehicle under a policy, it could have simply replaced the word "purchasing" with "changing" in section 1738(c). It did not do so.

In light of the foregoing, we hold that, under the plain language of section 1738(c), the removal of a vehicle from an insurance policy does not constitute a "purchase" of coverage requiring that the insured be provided the opportunity to waive the stacked limits of coverage at the time of removal.

Judgment affirmed.

President Judge Emeritus Bender, Judge Bowes, Judge Olson, Judge Dubow and Judge Murray join this Opinion.

Judge McCaffery files a Dissenting Opinion in which President Judge Panella and Judge Kunselman join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/2021