**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| ROBERT FRANKS AND KELLY A. FRANKS, H/W, | : | No. 42 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| Appellants | : | Superior Court dated September 24, |
| | : | 2021 at No. 2784 EDA 2019 |
| | : | Affirming the Order of the Bucks |
| v. | : | County Court of Common Pleas, |
| | : | Civil Division, dated September 4, |
| | : | 2019 at No. 2018-03954. |
| STATE FARM MUTUAL AUTOMOBILE | : | |
| INSURANCE COMPANY, | : | ARGUED: November 29, 2022 |
| | : | |
| Appellee | : | |

**OPINION**

**JUSTICE MUNDY**                                        **DECIDED: April 19, 2023**

In this appeal by permission, we address whether the Superior Court erred as a matter of law by holding that removal of a vehicle from a multiple motor vehicle insurance policy, in which stacked coverage[1] had previously been waived, does not require a

---

[1] "The concept of stacking relates to the ability to add coverages from other vehicles and/or different policies to provide a greater amount of coverage available under any one vehicle or policy." *Everhart v. PMA Ins. Group*, 938 A.2d 301, 302 (Pa. 2007).

renewed express waiver of stacked coverage pursuant to Section 1738(c) of the Motor Vehicle Financial Responsibility Law ("MVFRL").[2, 3]

The facts of the case are not disputed and were stipulated to before the Court of Common Pleas and Superior Court. We summarize them as follows. Appellants, husband and wife, Robert Franks and Kelly Franks sought automobile insurance from Appellee, State Farm Mutual Automobile Insurance Company in 2013 for their two vehicles, a 2002 Nissan Xterra and a 1999 Ford Taurus. Appellants included underinsured motorist coverage ("UIM") in their policy but completed a form rejecting stacked UIM coverage in compliance with Section 1738(d)(2) of the MVFRL. Absent such waiver, stacked coverage would be the default. The resultant policy was issued with unstacked UIM coverage of $100,000 per person and $300,000 per accident limits. Appellants added an additional vehicle, a 2012 Nissan Altima, to the policy effective January 22, 2014. A new form rejecting stacked UIM coverage was completed and signed by Robert Franks, as first named in the policy,[4] at that time. Thereafter, Appellants requested the 1999 Ford Taurus be removed from the policy effective July 23, 2014. Upon removal, the policy continued without any change to the coverage or premiums relative to the remaining vehicles. Appellants did receive a credit of $15.06 for the eleven days of unused premium attributable to the removed vehicle and the total ongoing six-

---

[2] 75 Pa.C.S. §§ 1701-1799.

[3] Specifically, the question accepted for review is as follows:

Did the en banc panel of the Superior Court err in ruling that Respondent was not required to obtain a new uninsured/underinsured stacking waiver from Petitioners pursuant to 75 Pa.C.S. § 1738(c) of the [MVFRL] when Petitioners deleted an automobile from their automobile insurance policy, and necessarily holding therefore that Petitioners are **not** entitled to a total of $200,000 in stacked underinsured motorist coverage?

*Franks v. State Farm Mut. Auto. Ins. Co.*, 275 A.3d 489 (Pa. 2022) (*per curiam*).

[4] See 75 Pa.C.S. § 1738(d).

month premium was about $250 less than with three vehicles. The next change to the policy occurred on March 26, 2015, when Appellants replaced their 2002 Nissan Xterra with a 2013 Nissan Frontier. No additional form rejecting stacked UIM coverage was offered or sought to be completed on the occasion of the removal of the Ford Taurus from the policy or thereafter and the ongoing premiums paid by Appellants reflected the lower rate for non-stacked UIM overage on two vehicles.[5]

On August 11, 2016, Robert Franks sustained injuries while operating the 2013 Nissan Frontier in an accident caused by the negligence of the operator ("tortfeasor") of the other vehicle involved. The tortfeasor had insufficient liability coverage under his insurance to cover the injuries and damages sustained by Appellants. Appellants therefore initiated a claim for UIM benefits under their policy with State Farm. The parties espoused opposing positions relative to the policy's UIM coverage limits. Appellants claimed a $200,000 limit because the absence of a valid waiver of stacked UIM coverage following the removal of the 1999 Ford Taurus resulted in the default stacked coverage mandated by § 1738(a). State Farm claimed the policy afforded a $100,000 limit because the removal of a vehicle from a multi vehicle policy, without more, did not alter the status of the prior waiver nor trigger a need to execute a new waiver under § 1738(c).[6]

---

[5] Appellants recognize that the Superior Court previously determined that, without more, a substitution of a vehicle covered under a multiple vehicle policy does not constitute a purchase or require an opportunity to revisit a prior stacking waiver made by an insured. Appellant's Brief at 11 (citing, *Shipp v. Phoenix Ins. Co.*, 51 A.3d 219 (Pa.Super. 2012)). Appellants do not advance any argument challenging that determination, although as discussed infra, Appellants argue language employed in *Shipp* does support their position relative to the removal of a vehicle from coverage under a multiple vehicle policy.

[6] Section 1738 provides in full as follows.

> (a) Limit for each vehicle. - When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under

(continued…)

this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b)     Waiver. - Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c)     More than one vehicle.--Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

(d)     Forms. –

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:
UNINSURED COVERAGE LIMITS
By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_____
Signature of First Named Insured

_____
Date

(2) The named insured shall be informed that he may exercise the waiver of the stacked limits of

(continued…)

The parties submitted cross claims for declaratory judgment to the trial court. After a nonjury trial on stipulated facts held August 27, 2019, the court issued an order on August 30, 2019, in favor of State Farm, ruling that the $100,000 limit applied. On subsequent appeal a panel of the Superior Court reversed, but the court accepted State Farm's application for reargument to the court *en banc*. In a divided decision the *en banc* panel affirmed the trial court. *Franks v. State Farm Mut. Auto. Ins. Co.*, 263 A.3d 1169 (Pa. Super. 2021) (*en banc*). The Superior Court viewed the presented matter as one of first impression involving an issue of statutory construction. *Id.* at 1171-72. The court noted that precedent interpreting § 1738 has dealt with addition of vehicles to a policy, increase of UIM/UM coverage, or substitution of vehicles under an existing multi-vehicle

---

underinsured motorist coverage by signing the following written rejection form:
UNDERINSURED COVERAGE LIMITS
By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_____
Signature of First Named Insured

_____
Date

(e) Signature and date.--The forms described in subsection (d) must be signed by the first named insured and dated to be valid. Any rejection form that does not comply with this section is void.

75 Pa.C.S. § 1738.

policy.  The court explained the core cases stem from "the Sackett Trilogy" of cases.[7] Subsequent cases in which the Superior Court interpreted the *Sackett* case holdings did not involve a removal of a vehicle from the policy with no change to the remaining coverage and premiums. *Id.* at 1174 (citing *Shipp*, *supra*; *Pergolese v. Standard Fire Ins. Co.*, 162 A.3d 481 (Pa. Super. 2017); *Toner v. The Travelers Home & Marine Ins. Co.*, 93 A.3d 872 (Pa. Super. 2014); *Bumbarger v. Peerless Indem. Ins. Co.*, 93 A.3d 872 (Pa. Super. 2014)).

Appellants argued that language in the *Shipp* case equated "purchase" as used in section 1738(c) with "change."  *Shipp* involved a substitution of vehicles under a policy, which the court held did not constitute a new purchase under section 1738.  The *Shipp* court went on to state that the key element in preceding cases "pertains only to the UM/UIM policy coverage, *whether it has changed*, and whether a new waiver of stacked coverage is required."  *Id.* (quoting *Shipp*, *supra* at 224 (adding emphasis)).  The majority deemed Appellants' reading of the language to be overexpansive as *Shipp's* essential holding was that the substitution of vehicles under a policy did not constitute a purchase as no additional coverage was acquired.   It deemed the quoted language as dicta and to the extent it lent itself to Appellants' interpretation it was disapproved.  *Id.* at 1175.

While the question presented was one of first impression, the majority found this Court's decision in *Barnard v. Travelers Home & Marine Insurance Co.*, 216 A.3d 1045 (Pa. 2019)[8] instructive.  Therein, this Court held that the section was not ambiguous and

---

[7] *Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194 (Pa. 2007) (holding that a plain-language reading of "purchase" under section 1738(c) includes the addition of a new vehicle to an existing multi-vehicle policy) (*Sackett I*); *Sackett v. Nationwide Mut. Ins. Co.*, 940 A.2d 329 (Pa. 2007) (clarifying that *Sackett I* applied to addition of a vehicle where the policy itself made the existing coverage finite) (*Sackett II*); *Sackett v. Nationwide Mut. Ins. Co.*, 4 A.3d 637 (Pa. Super. 2010) (finding the policy at issue did contain a "finite" clause requiring new stacking waiver forms to be presented to insureds) (*Sackett III*).

[8] *Barnard* was accepted for review by this Court upon a certified question of law from the United States Third Circuit Court of Appeals.

that according to the rules of statutory construction, the term "purchase" should be afforded its standard dictionary meaning as "[t]he act or an instance of buying." *Franks*, 263 A.3d at 1174 (quoting *Barnard*, 216 A.3d at 1051, quoting Black's Law Dictionary (11th ed. 2019)). Thus, the Superior Court explained:

> The [*Barnard*] Court then observed that, "[i]n common usage, 'to buy' means to acquire or obtain something from paying for it." Accordingly, the Court concluded that "the term 'purchase' requires two things: (1) the acquisition of something; and (2) payment. ... *In order to satisfy the first, the insured must obtain something that she does not already possess*."

*Id.*, quoting *Barnard*, *supra* at 1051, 1053 (adding emphasis). The intermediate court concluded that the removal of a vehicle from coverage under a multi-vehicle policy where appropriate credits were made, and the remaining coverage and premiums continued unchanged, did not meet this plain meaning of a purchase. *Id.* at 1176.

Three judges on the panel dissented. In their view, a liberal construction in favor of affording coverage for the insured is warranted "in close or doubtful cases." *Id.* at 1175 (McCaffery, J., dissenting) (citing *Jones v. Unitrin Auto & Home Ins. Co.*, 40 A.3d 125 (Pa. Super. 2012); *AAA Mid-Atl. Ins. Co. v. Ryan*, 84 A.3d 626 (Pa. 2014)). Applying that liberal construction, the dissent would hold that by removing a vehicle from coverage an insured does acquire something not previously possessed, to wit, coverage on fewer vehicles. *Id.* at 1177.

Before this Court the parties' arguments largely parallel their positions expressed before the trial court and Superior Court panels. They agree the question presented by this appeal involves an issue of statutory construction. Appellants' Brief at 10; Appellee's Brief at 9-10. In support of their respective positions the parties forward competing interpretations of this Court's decision in *Barnard* which dealt with the meaning of "purchase" in § 1738 in circumstances where an insured under an existing multiple vehicle policy acquires additional UIM coverage.

Appellants argue that under section 1738(c) of the MVFRL, the term "purchasing" UIM coverage includes circumstances when an insured removes a vehicle from an existing multi-vehicle policy because it changes the potential UIM coverage from that offered under the original policy and because the amount of premiums for that coverage also changes. Reviewing the same caselaw expounded upon by the Superior Court, Appellants urge the interpretation espoused by the dissenting judges.

> When the logic of the *Shipp* holding is applied to the situation in the instant case, it is clear that a new stacking waiver was required under Section 1738(c) of the MVFRL because Plaintiffs **changed** the number of vehicles covered by the Policy when they deleted their third vehicle. The vehicle removal/deletion altered the **potential** stacked UM/UIM coverage that was available.

Appellants' Brief at 18-19 (emphasis original). Appellants also cite *Pergolese v. Standard Fire Ins. Co.*, 162 A.3d 481 (Pa. Super. 2017), in which the Superior Court held that when an insured removes a vehicle from coverage under a multi-vehicle policy and, at a distinct later time (forty-four days in that case, which included a new separate declaration page and premium adjustments with both the removal and the later addition), adds a vehicle, that addition is not a replacement, thus requiring a new waiver of stacking form. Appellants note in the stipulated facts of this case, the removal of a vehicle also generated a new declaration page reflecting the reduced number of covered vehicles and the reduced premium. Finally, Appellants argue our holding in *Barnard* rejected the notion that under the plain language of section 1738(c) "purchase" was limited to "initial purchase." *Id.* at 20. Appellants argue the import of our holding in *Barnard* applies when there is a "new, aggregate amount of coverage." *Id.* at 21 (quoting *Barnard*, 216 A.3d at 1052).

Along the lines of the Superior Court majority opinion, State Farm contends removal of a vehicle from a multi-vehicle policy, where the coverages and charges on the remaining vehicles is unchanged, does not constitute a purchase under the plain meaning

of the language of section 1738(c). State Farm argues the plain meaning of "purchase" requires some acquisition in exchange for payment. By removing a vehicle from coverage of the policy, Appellants acquired nothing they did not already have at the same cost. State Farm argues Appellants misstate the holding of *Barnard*, which State Farm contends applied to the insureds in that case acquiring new increased coverage they did not have prior to the addition of a vehicle. State Farm notes all of the cases cited by Appellants, as noted by the Superior Court Majority when it acknowledged it faced an issue of first impression, dealt with when an insured secured additional coverage under an existing multi-vehicle policy. Brief for Appellee at 26-28. Nothing in those cases addressed the effect of removing a vehicle from a policy. The stipulated facts in this case make clear that the "deletion of the 1999 Ford Taurus from the policy did not change any of the coverages" on the remaining vehicles "or the premiums charge" for their coverage. *Id.* at 29 (quoting R. 104a.-105a.)

As recognized by the parties and the courts below, the question presented involves a question of law involving the interpretation of section 1738(c).[9] After careful consideration, we conclude the Superior Court did not err in affirming the trial court's order

---

[9]"The proper interpretation of a statute is a question of law; thus, our standard of review is de novo and our scope of review, to the extent necessary to resolve the legal question, is plenary." *Borough of Heidelberg v. W.C.A.B. (Selva)*, 928 A.2d 1006, 1009 (Pa. 2007). The Statutory Construction Act, 1 Pa.C.S. §§ 1501 *et seq.*, guides our interpretation of legislative intent.

> "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly...." 1 Pa.C.S. § 1921(a). In this regard, when "the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). When the words of a statute are not explicit, however, the General Assembly's intent is to be ascertained by considering matters other than the statutory language. 1 Pa.C.S. § 1921(c)

*Everhart v. PMA Ins. Group*, 938 A.2d 301, 304 (Pa. 2007).

granting State Farm's declaratory judgment action and determining that the removal of a vehicle from coverage under the policy, while not disturbing the remaining coverage, did not constitute a "purchase" under section 1738(c) triggering any renewed requirement to offer or acquire an express waiver of previously waived stacked UIM coverage. As we explained in *Barnard*, the language employed by the Legislature in section 1738 is not inherently ambiguous nor does it reflect an ambiguity in context with other aspects of the MVFRL. *Barnard*, 216 A.3d at 1052. Accordingly, we employed the plain meaning of "purchasing" to determine when an insurer must offer an opportunity to waive stacking on approved forms. Further, "purchase" pertains to UIM/UM coverage rather than the underlying policy itself. *Id.*

The problem with the approach of Appellants and the dissenting judges in the Superior Court *en banc* panel is that they depart from the plain meaning of the language employed by the legislature to reach a result in closer alignment with what they deem to be the underlying purpose of the provisions at issue. As noted above, the dissenting judges urged a liberal interpretation of the statutory language in aid of the perceived purpose of the MVFRL to favor coverage. To that end they equate the term "purchase" as used in section 1738(c) with any change of coverage. Appellants express concern that a removal of a vehicle from a policy may alter the economic considerations the insured considered in initially waiving stacking, making it now more affordable to keep stacked coverage. *See* Appellant's Brief at 21 ("This was a new purchase of coverage that cost a different amount than the prior purchase of coverage …"). As a separate matter, the Superior Court dissent expressed the interpretation that "purchase" encompasses any "change," "complies with our stated policy of construing the statute 'liberally in favor of the insured.'" *Franks*, 263 A.3d at 1177 (McCaffery, J., dissenting) (citation omitted).

In pursuing these purported policy aims, however, neither Appellants nor the dissenting judges express how the use of the phrase "[e]ach named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy …," as used in section 1738(c), is ambiguous so as to trigger alternate interpretive considerations. *See* 1 Pa.C.S. § 1921(b) (directing that when the statutory text is unambiguous, its letter is not to be disregarded to pursue its spirit). Under the stipulated facts it is clear that when Appellants removed one vehicle from coverage under the policy, the conditions and costs of coverage on the remaining vehicles remained unchanged. The fact that Appellants' potential financial considerations in initially waiving stacked coverage may now differ does not convert the removal into a "purchase" under the plain meaning of that term adopted in *Barnard*. We recognized in *Barnard* that application of a statute's plain unambiguous meaning may have policy implications, but that absent ambiguity, such concerns are best addressed to the Legislature and cannot justify disregarding a statute's plain meaning. *See generally Program Admin. Svcs. v. Dauphin Cty. Gen. Auth.*, 928 A.2d 1013, 1017-18 (Pa. 2007) (observing it is the General Assembly's function to set public policy and the courts' role to enforce that policy subject to constitutional limitations). As we stated in that matter: "We recognize the concerns of Travelers and its *amici* that our holding will have a negative impact on the insurance industry. However, invocations of, and arguments about, public policy cannot override the plain language of Subsection 1738(c), nor can they contravene the plain meaning of the term 'purchase.'" *Barnard*, 216 A.3d at 1054 (Pa. 2019).[10]

---

[10] We note that former Chief Justice Saylor dissented in *Barnard*. In his view, the term "purchase" as used by the Legislature in the statute had acquired a specialized industry meaning that was more restrictive than the balance of the members of this Court viewed the term. *Barnard*, 216 A.3d at 1054-55 (Pa. 2019) (in dissent). Thus, even the dissenting view in *Barnard* would afford Appellants no relief.

Today we hold that the logic of *Barnard* in construing "purchase" in accord with its plain meaning does not justify Appellants' expansive interpretation equating the term with any "change." The removal of a vehicle from coverage under a multi-vehicle policy under conditions that do not alter the pre-existing coverage or costs relative to the remaining vehicles is not a purchase requiring a renewed express waiver per section 1738(c).

We affirm.

Chief Justice Todd and Justices Donohue, Dougherty, Wecht and Brobson join the opinion.